**David W. TOM, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 84–1756.**

United States Court of Appeals, Seventh Circuit.

Argued March 5, 1985.

Decided Dec. 11, 1985.

Floyd A. Ramsier, Ft. Wayne, Ind., for plaintiff-appellant.

Jeffrey M. Teske, Asst. Regional Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before WOOD, POSNER and FLAUM, Circuit Judges.

HARLINGTON J. WOOD, Jr., Circuit Judge.

Claimant David Tom appeals the decision of the district court granting summary judgment in favor of the Secretary of Health and Human Services ("Secretary") affirming the Secretary's denial of Tom's application for Social Security Disability Insurance Benefits. We reverse and remand.

Tom applied for disability insurance benefits on August 26, 1981, claiming that he became disabled and unable to work on April 10, 1981, because of constant pain, muscle spasms and a concurrent loss of strength as a result of kidney stone surgery and the drainage of an infected abscess on his left side. He also complained of a hiatal hernia, high blood pressure and pain in his right shoulder and neck. Tom was 62 years old at the time of his application and a high school graduate. The Social Security Administration denied Tom's application. After a second denial following his request for reconsideration, Tom requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). A hearing was held on June 17, 1982, and Tom appeared along with counsel. Although a number of medical reports and tests were made a part of the record, Tom was the only witness to testify. Tom stated that he had worked for 25 years as a mechanical technician (model maker) for the Magnavox Corporation. He built and assembled the chassis for the company's products but did none of the electrical work. His work required him to use measuring tools, drills, saws and lathes, and read blueprints. Tom also stated that he was hospitalized twice in 1980. In January, he had a kidney stone removed but developed an incisional hematoma on his left side which required drainage. Tom states he was off work for five to six months. In October, Tom was hospitalized for abdominal pain. Although he again

returned to work, Tom left his job in April 1981 and has not worked since.

At Tom's request, the record remained open following the hearing to allow the admission of two additional reports from Tom's treating physicians. After the receipt of these reports, the ALJ sent written interrogatories, along with copies of a vocational report and work history completed by Tom, to Dr. Robert Barkhaus, a vocational expert for the Department of Health and Human Services. In response, Dr. Barkhaus determined that Tom possessed several skills that are transferable, including the "[u]se of various tools and materials in construction of radio and electronics equipment manufacturing, [r]eading blueprints, [and] working independently." [1] He listed four jobs which he asserted Tom could perform with these skills and further stated that the listed jobs would require "very little [vocational] adjustment" because they were mostly with the "same employer." Upon receipt of Barkhaus' responses, the ALJ wrote to Tom's attorney, informed him of this additional evidence, and invited him to submit written comments. Tom's attorney replied and submitted a written rebuttal although he complained of the inability to cross-examine Dr. Barkhaus.[2]

In his decision of September 30, 1982, the ALJ concluded that Tom was incapable of returning to his past work as a mechanical technician for the Magnavox Corporation.

Nevertheless, he determined that Tom retained the capacity to perform sedentary work. The ALJ also found that the skills Tom acquired from his work as a mechanical technician were transferable to other work and required very little vocational adjustment, and concluded that 20 C.F.R. § 404.1569 and Rule 201.03, Table No. 1 of Appendix 2, 20 C.F.R. Part 404, Subpart P, directed a ruling that Tom was not disabled. The Secretary's Appeals Council denied Tom's request for review of the ALJ's decision, and it became the final decision of the Secretary. Tom then instituted an action in federal district court under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the Secretary's decision denying his claim for disability benefits. The parties filed cross motions for summary judgment. Finding the Secretary's decision supported by substantial evidence, the district court granted the Secretary's motion while denying Tom's and entered summary judgment in favor of the Secretary. Tom now appeals.

Disability determinations involve a two-step process. The initial burden of going forward lies with the claimant who must demonstrate that he has an impairment which prevents him from performing his previous work. *Johnson v. Heckler*, 769 F.2d 1202, 1210 (7th Cir.1985); *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982). *See also* 42 U.S.C. § 423(d)(5). In the case

---

1. The regulations require that a "skill" relate to specific work activities and be acquired. *See* 20 C.F.R. §§ 404.1565(a) and 404.1568(d)(1); Section 201.00(e) of Appendix 2, 20 C.F.R. Part 404, Subpart P. *See also Blake v. Secretary of Health and Human Services*, 528 F.Supp. 881, 885 (E.D. Mich.1981). Recently, the Secretary clarified the definition of "skill."

 [A skill] is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

 Social Security Ruling 82–41 § 2 at 197–98 (CE 1982). Pursuant to this standard, "working independently" cannot appropriately be considered a skill. Rather, it more closely resembles an ability or aptitude which relates to "basic work activities ... necessary to do most jobs." *See* 20 C.F.R. § 404.1521(b). *See also*

*Podedworny v. Harris*, 745 F.2d 210, 220–21 (3d Cir.1984); *Blake v. Secretary of Health and Human Services*, 528 F.Supp. at 885–86.

2. The use of an adverse post-hearing vocational report without an opportunity to cross-examine its author and to present rebuttal evidence has been held to violate a claimant's right to due process of law. *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir.1984). *See also Lonzollo v. Weinberger*, 534 F.2d 712, 714 (7th Cir.1976) (opportunity to submit material or comments in writing to rebut adverse post-hearing medical report did not fulfill claimant's statutory right to decision based on "evidence adduced at the hearing"). However, Tom does not contend on appeal that the ALJ's reliance on the post-hearing vocational report denied him due process, and accordingly, we do not address the merits of his complaint to the ALJ.

*sub judice,* there is no dispute that this burden was met because the ALJ made a specific finding that Tom's condition prevented his return to his job at Magnavox. The burden then shifted to the Secretary to produce evidence to establish the existence of alternative "substantial gainful employment" which exists in the national economy and which Tom could perform, considering not only his physical capability, but also his age, education and work experience. *Johnson v. Heckler,* 769 F.2d at 1210; *Whitney v. Schweiker,* 695 F.2d at 786.

Tom initially contends that the Secretary erred in finding that he could do sedentary work. Referencing particularly the diagnoses and opinions of Drs. Guebard, Tannard and LaSalle, Tom claims that the ALJ arbitrarily rejected the medical evidence supportive of his total inability to perform gainful employment in favor of the vocational report of Dr. Barkhaus. Contrary to Tom's assertions, the very opposite is true. First of all, Dr. Barkhaus did not find Tom capable of performing sedentary work. Rather, he merely listed a number of jobs he believed Tom could perform assuming that the evidence showed that Tom could engage in sedentary work. Furthermore, the same medical reports which Tom points to in support of his claim of total disability also provide the very basis for the ALJ's finding on this issue.

In his most recent report completed on July 15, 1982, Dr. Guebard, Tom's treating physician, remarked that Tom should be restricted from only "excessive" lifting and standing although admittedly he also reported that these restrictions prevent Tom from returning to his job at Magnavox and from performing most other jobs that he is skilled to do. Apparently, Dr. Guebard's conclusions were, at least to some extent, influenced by a conversation he had a year earlier with Dr. Tannard, the Magnavox company doctor. Although Dr. Tannard did not submit a report, Dr. Guebard recalled that during the course of their conversation, Dr. Tannard remarked that Tom not only should be declared disabled from his job due to discomfort from lifting, standing and walking, but that inasmuch as

he had one of the least physically demanding jobs at Magnavox, Tom probably would not be able to handle other available jobs with the company. The record contains no further elaboration of these second-hand remarks of Dr. Tannard as they relate to Tom's physical limitations. While the opinions of Drs. Guebard and Tannard are certainly adequate to support Tom's inability to return to his regular occupation, they are also entirely consistent with the ALJ's finding that Tom is capable of sedentary work and provide no support for a claim of total disability.

Likewise, the reports of Drs. LaSalle and Manning provide a further basis for the ALJ's finding of Tom's capacity to perform sedentary work. Dr. Manning, a neurosurgeon who examined Tom at the request of Dr. Guebard, described Tom's neurological examination as "normal" except for a subsiding acute cervical nyositis. Dr. LaSalle, an orthopedic surgeon who treated Tom's shoulder pains on several occasions, outlined Tom's limitations as not being able to do "heavy" lifting and work with his upper extremity. Accordingly, the ALJ's finding as to Tom's residual functional capacity is not in conflict with, but rather is supported by, the medical evidence of record. Coupled with the ALJ's unchallenged finding that Tom's allegations of pain were not "wholly credible" in light of the medical evidence, his daily activities and the ALJ's observations of Tom during the hearing, *see Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984), the district court properly concluded that substantial evidence supported the Secretary's finding that Tom retained the ability to do sedentary work.

The ALJ went on to find that Tom's past work as a mechanical technician was classified as "medium" and "skilled" work. *See* 20 C.F.R. §§ 404.1567(c) and 404.1568(c). These findings are not disputed. Tom objects, however, to the ALJ's further finding that he "has work skills, demonstrated in past work, which can be applied [*i.e.,* transferred] to meet the requirements of other work." This finding is critical, for under the Medical-Vocational Guidelines, 20

C.F.R. Part 404, Subpart P, Appendix 2 (the "Grid"), a person of advanced age [3] with a high school education or more [4] who has acquired skills as a result of his past work is considered disabled if those skills are "not transferable." *See* Rule 201.06, Table No. 1 of Appendix 2, 20 C.F.R. Part 404, Subpart P.[5] Mindful that on appeal the Secretary's factual determinations will not be disturbed if supported by substantial evidence, 42 U.S.C. § 405(g), we review the record as a whole to determine whether there exists such relevant evidence as a reasonable mind might accept as adequate

**3.** "Advanced age" is defined as 55 and over. Tom was 63 years old at the time of his administrative hearing.

**4.** Absent other evidence to the contrary, numerical grade level is used to determine educational abilities. Formal schooling at a 12th grade level or above is considered "high school or more." 20 C.F.R. § 404.1564(b). Tom has a twelfth grade education.

**5.** TABLE NO. 1—RESIDUAL FUNCTIONAL CAPACITY: MAXIMUM SUSTAINED WORK CAPABILITY LIMITED TO SEDENTARY WORK AS A RESULT OF SEVERE MEDICALLY DETERMINABLE IMPAIRMENT(S)

| Rule | Age | Education | Previous Work Experience | Decision |
|---|---|---|---|---|
| 201.01 | Advanced age | Limited or less | Unskilled or none | Disabled |
| 201.02 | do | do | Skilled or semi-skilled—skills not transferable | Do |
| 201.03 | do | do | Skilled or semi-skilled—skills transferable | Not Disabled |
| 201.04 | do | High school graduate or more—does not provide for direct entry into skilled work | Unskilled or none | Disabled |
| 201.05 | do | High school graduate or more—provides for direct entry into skilled work | do | Not Disabled |
| 201.06 | do | High school graduate or more—does not provide for direct entry into skilled work | Skilled or semi-skilled—skills not transferable | Disabled |
| 201.07 | do | do | Skilled or semi-skilled—skills transferable | Not Disabled |
| 201.08 | do | High school graduate or more—provides for direct entry into skilled work | Skilled or semi-skilled—skills not transferable | Do |

(Footnotes omitted).

The Secretary acknowledges that the ALJ erred in his application of Rule 201.03. The appropriate rule in this case, the Secretary contends, is Rule 201.07. The Secretary asserts, however, since both rules direct the same result, *i.e.*, "not disabled," the error was harmless.

to support the Secretary's finding of transferability. *See Johnson v. Heckler*, 741 F.2d 948, 953 (7th Cir.1984).

The Secretary has formulated a definition of "transferable skills" and has set forth guidelines as to how "transferability" is determined. *See* 20 C.F.R. § 404.1568(d). At the same time, she acknowledges that there have been misinterpretations and misapplications of the regulations, and confusion regarding the nature of the evidence necessary to support a finding of transferability. *See* Social Security Rule 82–41 at 197 (CE 1982). *See, e.g., Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984). In the usual case, the regulations provide for an examination of three factors:

(2) *How we determine skills that can be transferred to other jobs.* Transferability is most probable and meaningful among jobs in which—

(i) The same or a lesser degree of skill is required;

(ii) The same or similar tools and machines are used; and

(iii) The same or similar raw materials, products, processes, or services are involved.

20 C.F.R. § 404.1568(d)(2). Complete similarity of all three factors is not necessary for a finding of transferability. 20 C.F.R. § 404.1568(d)(3).

The ALJ here relied upon Dr. Barkhaus' responses to the ALJ's interrogatories. Asked to assume that Tom was capable of no more than sedentary work, Dr. Barkhaus responded affirmatively when asked whether Tom would "be able to perform sedentary jobs or kinds of work available in significant numbers in the regional economy." In response to an additional request of the ALJ, Dr. Barkhaus went on to list four jobs, existing in the regional economy, which he claimed Tom could perform, giving their approximate number and locations as follows:

"1) Electronics Assembler—1,000 + Magnavox, CTS, E-Systems, ITT

2) Electronics Inspector or Checker—100 —Same locations

3) Wire Lead preparation worker—100 + —Same locations

4) Electrical Accessories Assembly—500 + —G.E., Triad-Utrad"

Accepting the representations of Dr. Barkhaus, the ALJ concluded:

"[Tom] has work skills, demonstrated in past work, which can be applied to meet the requirements of other work. Examples of such work are electronics assembler, electronic inspector or checker, wire lead preparation worker, and electrical assessories assembler."

Although Dr. Barkhaus unmistakably identified specific occupations to which Tom's acquired work skills are transferable, Tom complains that Dr. Barkhaus failed to "describe what those positions involve." Tom is limited to sedentary work, but each of the four occupations identified by Dr. Backhaus require that the worker be capable of performing at least "light" work. *See* Supplement to *Dictionary of Occupational Titles*, United States Department of Labor (4th ed.1977), Part B, "Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles," at 406 (wire lead preparation worker), 418 (electronics assembler and inspector or checker), and 419 (electrical assessories assembly).[6]

The Secretary's regulations specify that the *Dictionary of Occupational Titles* may be used for taking administrative notice of "reliable job information." 20 C.F.R. § 404.1566(d)(1). *See Townley v. Heckler*, 748 F.2d 109, 113 (2d Cir.1984). Recently, the Second Circuit remanded a social security case to the ALJ in a case virtually identical to the case *sub judice. Mimms v. Heckler*, 750 F.2d 180 (2d Cir. 1984). There, as here, the vocational expert knew that the claimant was restricted

---

**6.** The Supplement provides a listing of, among other things, the physical capacities which a worker must minimally possess in order to be able to perform each of the jobs listed in the Department's *Dictionary of Occupational Titles.*

Moreover, the exertional classifications of jobs, *i.e.,* "sedentary," "light," "medium," "heavy," and "very heavy," have the same meaning in the regulations as they do in the *Dictionary of Occupational Titles.*

to sedentary work and unable to return to his former job. *Id.* at 184. There, as here, the expert stated that the claimant could transfer skills that he possessed to other sedentary jobs, and gave four examples of such jobs. *Id.* The ALJ in turn, as here, relied upon the vocational expert's testimony and found that the claimant could perform the four jobs listed. *Id.*[7] The Second Circuit, however, found that each of the four jobs the vocational expert identified were listed in the *Dictionary of Occupational Titles* as requiring (at a minimum) the capacity to perform light work. *Id.* at 186. Because of the conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* (the Secretary's often-used source of job information and requirements), the court concluded that "the Secretary failed to demonstrate the existence of substantial gainful employment of a sedentary nature, which the claimant was capable of performing." *Id.* So too here, it would appear that those jobs to which Tom could apply the skills he possesses are beyond his physical capacity to perform.

 The ALJ also failed to properly assess the impact of Tom's age. Under the regulations, age plays an important role in the determination of whether or not skills are transferable. A person restricted to sedentary work and handicapped by the adversities of "advanced age" (55 and over)

is presumed disabled unless these limitations are compensated by the substantial vocational asset of transferable work skills which require "very little, if any, vocational adjustment ... in terms of tools, work processes, work settings, or the industry." *See* Section 201.00(f) of Appendix 2, 20 C.F.R. Part 400, Subpart P.[8] *See also Blake v. Secretary of Health and Human Services,* 528 F.Supp. 881, 886 (E.D.Mich. 1981). The regulations also recognize, however, that individuals who are "close to retirement age" (60–64)[9] experience even greater vocational difficulties.[10] When the regulations were amended effective August 20, 1980, the following provision was added to 20 C.F.R. § 404.1563(d):

> If you are close to retirement age (60–64) and have a severe impairment, we will not consider you able to adjust to sedentary or light work unless you have skills which are *highly marketable.* (Emphasis added).

The language is unmistakably clear. Absent a finding that a claimant who is close to retirement age has acquired skills which are also "highly marketable," the regulations do not permit a finding of transferability. *See* Francis, Social Security Disability Claims § 13:04 (1983). *See also Blake v. Secretary of Health and Human Services,* 528 F.Supp. at 886–87. Although the Secretary would excuse the ALJ's fail-

**7.** The ALJ here never explicitly found that the four jobs listed by the vocational expert required only the ability to perform sedentary work; he only found that Tom's skills could be transferred to the four jobs.

**8.** Information published with issuance of Section 201.00(f) explains:
> In the regulations previous experience, particularly if it resulted in work skills that are transferable to other jobs, is treated as a substantial vocational asset in accordance with sources which reflect that workers with skills tend to have fewer and shorter periods of unemployment, and that skilled workers are often in demand even at age levels when some workers without acquired skills are experiencing difficulties in the labor market.

43 Fed.Reg. 55355 (November 28, 1978).

**9.** The ALJ found that Tom was of "advanced age." This is incorrect; Tom's age at the time of the hearing, 63, closely approaches retirement

age. *See* 20 C.F.R. § 404.1563(d). Due to the relevancy of vocational factors in the instant case, this error is not harmless. *Cf. Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983) (ALJ's finding that 61 year old claimant was closely approaching advanced age was harmless error because vocational factors irrelevant).

**10.** [T]he 'older worker' is usually considered as an individual 45 years of age and older, while age 55 represents a critical point in the attempts of 'older workers' to obtain employment. At age 65, of course, the 'older worker' can qualify for unreduced social security retirement benefits. Between these 10-year increments, the regulations include ages 50 and 60 resulting in a 5-year gradation of age distinctions which better recognize *progressive* difficulties. (Emphasis added).
43 Fed.Reg. 55359 (November 28, 1978).

ure here to make a finding on the issue of "highly marketable" skills *vel non*, we cannot.

█ This court requires of the ALJ a "minimal level of articulation" of his assessment of the evidence to show that he considered that which the law requires him to consider. *Stephens v. Heckler,* 766 F.2d 284, 287–88 (7th Cir.1985); *Zalewski v. Heckler,* 760 F.2d 160, 166 (7th Cir.1985); *Zblewski v. Schweiker,* 732 F.2d at 78. *See also Johnson v. Heckler,* 769 F.2d at 1212–13. Here, the record discloses that the ALJ gave no consideration to the issue of "highly marketable" skills. The words "highly marketable" are not used, nor is the relevant regulation cited. Indeed, the ALJ did not even include in his decision the approximate number and locations of the four jobs which the vocational expert identified as existing in the Fort Wayne area (facts which the Secretary, at oral argument, urges that we accept as adequate to support an implicit finding that Tom possesses skills which are highly marketable).

Consequently, we conclude that the ALJ failed to meet the threshold standard that this circuit requires to ensure meaningful appellate review. *See Stephens v. Heckler,* 766 F.2d at 291 (Flaum, J., concurring). On the basis of the record before us, we cannot say that the skills Tom possesses (and identified by Dr. Barkhaus) are, or are not, highly marketable. Rather, its determination should be left to the ALJ in the first instance.[11] Consequently, we fail to find the requisite substantial evidence in the record for the Secretary's finding that Tom has work skills which can be transferred to meet the requirements of other work and must conclude that the Secretary has failed to carry her burden (*i.e.,* to establish that Tom is capable of engaging in substantial gainful activity).

For the reasons stated herein, we RE-VERSE and REMAND this case to the district court with directions to remand to the Secretary for further proceedings consistent with our decision.[12]

---

**11.** The regulations do not define the term "highly marketable," and our research of the administrative history and relevant case law has turned up nothing helpful to its interpretation. *See, e.g., Blake v. Secretary of Health and Human Services,* 528 F.Supp. at 887 ("[V]isual acuity, general intelligence, hand-eye-foot coordination and manual dexterity, even if considered skills, are hardly 'highly marketably.'"). Some insight is gained as to its meaning by referring to the definition of age in a preceding subsection of the Secretary's regulations. "Age" not only refers to "how old you are (your chronological age)" but also to "the extent to which your age affects your ability to adapt to a new work situation and *to do work in competition with others.*" 20 C.F.R. § 404.1563(a) (Emphasis added). As is apparent, the concept of age in the regulations is not so simple as it seems. *McCoy v. Schweiker,* 683 F.2d 1138, 1147–48 (8th Cir.1982) (en banc). Although the statutory definition of disability specifically provides that vocational factors must be viewed in terms of their effect on the ability to perform jobs rather than the ability to obtain them, *see* 42 U.S.C. § 423(d)(2), the Secretary has nevertheless recognized that there is a direct relationship between age and the likelihood of employment, 43 Fed.Reg. 55353 (November 28, 1978), and that the advantage of having acquired (through past employment) certain skills or training may no longer offset the vocational disadvantage of age as a claimant becomes older.

**12.** Judge Posner's dissent necessitates a majority response.

This is a run-of-the-mill social security case involving one applicant. We are not awarding the applicant, Tom, benefits, only remanding the case. That will give both parties the opportunity to correct the deficiencies and to reexamine the matter to determine anew whether or not the applicant may or may not be entitled to benefits, nothing more. We are not granting Tom the benefits he seeks, but likewise we would not begrudge him any benefit to which he may be rightly entitled.

Our resolution of this case is, of course, not based on sentiment and sympathy for "pathetic people," as Judge Posner characterizes them, but on the application of established law. We apply the customary standard to review the administration of a statutory government insurance program, not a charitable breadline. Tom has paid his social security premiums with his past labors, and is entitled to fair consideration of his claim.

As to the merits, since the ALJ found that Tom, a man of advanced age, had impairments and was unable to do his usual work, one of the issues involves the transfer of Tom's work skills to possible new employment. The ALJ found that his skills were transferable, but Tom contends that the ALJ "failed to analyze the ability of the appellant [Tom] to transfer the skills to new employment." We agree with Tom. The mere parroting by the ALJ of four position titles

**1258**

POSNER, Circuit Judge, dissenting.

The appellant has asked us to reverse the district court—which affirmed the denial of the appellant's application for social security benefits—on grounds that my brethren correctly find to be without merit. That ought to be the end of the case. But instead my brethren reverse, and send the case back to the social security administration because of two errors in the administrative law judge's opinion. The vocational expert listed jobs that involve light rather than, as the administrative law judge thought, sedentary work; and the administrative law judge failed to take into account the fact that the applicant is not only of advanced age but is close to retirement, and the regulations distinguish between these two statuses. Neither ground was raised by the applicant (who is represented by counsel) at any stage in these proceedings—not before the administrative law judge, not before the appeals council, not before the district court, not in his brief in

without more is not enough. Those four positions are shown by the *Dictionary of Occupational Titles* (a source specifically approved by the Secretary's regulations) not to be suitable for people like Tom who have been determined to be capable only of sedentary work. The cited positions are for persons who must be capable of doing at least "light" work, and there is, of course, a difference between "light" and "sedentary" work. The ALJ simply appears to have made a mistake. The result, therefore, is that there is a lack of substantial evidence in the record to support the Secretary's finding. We create no new standard of review.

On another issue, the ALJ failed to find or even discuss, as he was required to do, whether Tom's skills are "highly marketable." That is similarly another part of Tom's contention that the record lacks substantial evidence to support the finding of transferability. At oral argument, Tom's counsel pointedly argued that Tom's skills are not highly marketable. In response, the Secretary's counsel admitted that the ALJ never referred to the term "highly marketable," and made no finding whatsoever on the issue. The Secretary's counsel did not once assert that this issue was not properly before this court, that it had not been adequately raised by Tom or had been waived. He had a fair opportunity to do so if that was his position. Little agency time or effort will be consumed in taking another look at this case.

Although 42 U.S.C. § 405(g) restricts judicial review and directs that the Secretary's findings are conclusive if supported by substantial evi-

this court, not at oral argument. The government has had no opportunity to comment on these grounds; but a more basic objection to what my brethren have done is that grounds for reversal that are not raised are waived, especially when the case involves review of administrative action and the grounds were not presented to the administrative agency either.

This court has in recent years firmly and repeatedly abjured the practice of reversing decisions on grounds not preserved by the appellant. See, e.g., *General Motors Acceptance Corp. v. Central Nat'l Bank of Mattoon*, 773 F.2d 771, 778 n. 5 (7th Cir.1985); *Gumz v. Morrissette*, 772 F.2d 1395, 1399 n. 3 (7th Cir.1985); *Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 319 (7th Cir.1985); *City of Chicago v. U.S. Dept. of Labor*, 753 F.2d 606, 607 n. 1 (7th Cir.1985); *Walker v. Maccabees Mutual Life Ins. Co.*, 753 F.2d 599, 602 (7th Cir.1985); *Parrett v. City of Connersville*, 737 F.2d 690, 698 (7th Cir.

dence, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982); *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.1980). We cannot say that substantial evidence supports each necessary administrative finding. We are not foreclosing the Secretary on any issue, but we are not willing to ignore the deficiencies in the present record. If Tom has a valid claim, then his share of the "public moneys" should not be denied him in order to make his share available for some other worthy purpose. Considering the particular facts in this case we have created no circuit conflicts.

We have great doubt, contrary to Judge Posner's view, that this majority opinion will jeopardize our whole system of appellate justice. We are not using Tom's social security problem as a means of advocating that we abandon our own judicial system in favor of the "Continental systems of procedure," whatever that may be.

We shall not respond to certain other comments by Judge Posner which we view as far afield from what is necessary or appropriate to the decision of this case on its merits.

We believe that the Secretary simply has failed in her proof, and that Tom has shown himself fairly entitled, not to benefits, but to further and proper consideration of his claim.

1984). Twice recently we refused to consider a ground raised for the first time in the appellant's reply brief, see *Christmas v. Sanders*, 759 F.2d 1284, 1291–92 (7th Cir.1985); *Beerly v. Department of the Treasury*, 768 F.2d 942, 949 (7th Cir.1985); here it was never raised. In *Hershinow v. Bonamarte*, 735 F.2d 264, 266 (7th Cir. 1984), we refused to consider a ground for reversal that the appellant had raised but that had been "presented in so perfunctory and underdeveloped a manner in his brief that we shall not consider it." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983), is a similar case, where the court, in refusing to consider the appellant's "asserted but unanalyzed" claim, remarked, as if with the present case in mind, "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." But at least in that case the question had been raised; here it was never raised. The logic of my brethren's position is that an appellant can file a brief with us which says in its entirety, "I would like you to reverse, and I rely on you to discover whether there are grounds for reversal." Granted, some of the cases I have cited say that in exceptional circumstances the court may reverse on a ground not raised in timely fashion, even if it is not a jurisdictional ground. But instances of this are very rare, and my brethren point to no exceptional circumstances in the present case.

The principle that grounds for reversal not raised are waived is not one from which judicial review of denials of social security disability benefits is exempt. The Tenth Circuit recently held that an applicant for social security disability benefits who fails to present a ground for reversing the denial of benefits in the district court is barred from raising it in the court of appeals. See *Channel v. Heckler*, 747 F.2d 577, 579 n. 2 (10th Cir.1984). The decision today thus creates a conflict with the Tenth Circuit. It also ignores the principle, a corollary of the requirement of exhaustion of administrative remedies, that a court may not set aside the decision of an administrative agency on a ground not presented to the agency. See, e.g., *Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946); *Myron v. Chicoine*, 678 F.2d 727, 731–32 (7th Cir.1982); *Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs*, 644 F.2d 827, 832 (9th Cir.1981); *Director, Office of Workers' Compensation Programs v. North Am. Coal Corp.*, 626 F.2d 1137, 1143 (3d Cir.1980). As with the cognate principle governing our review of district court judgments, there is an exception for special circumstances (notice that both principles are violated by the majority decision in this case), see, e.g., *McKart v. United States*, 395 U.S. 185, 196–97, 89 S.Ct. 1657, 1663–65, 23 L.Ed.2d 194 (1969), but no attempt has been made to bring this case within the exception. And again it cannot be argued that social security cases are somehow exempt. An applicant for social security benefits must present his reasons for thinking he is entitled to such benefits to the social security administration; if he does not, he cannot use them as grounds in court for upsetting the denial of benefits. We so held in *Herd v. Folsom*, 231 F.2d 276, 278–79 (7th Cir.1956), a decision my brethren bury today without the usual obsequies—without, that is to say, even attempting to distinguish it; without, indeed, so much as citing it. See also *Cross v. Finch*, 427 F.2d 406, 408 (5th Cir.1970).

I wonder in what sense we can claim to have an adversarial system of justice if appellate judges conceive their duty to be to search the record in the trial court or the administrative agency for errors that the appellant's counsel missed, and to reverse if any are found. Appellants' counsel will have less incentive to do a thorough job; and appellees' counsel will feel obliged to respond to grounds not raised by the appellant, lest the appellate court advance the ground on its own initiative and reverse without benefit of the appellee's views. Maybe an adversarial system of justice is not the best system there is, either in gen-

eral or with particular reference to judicial review of denials of social security disability benefits. (The system is not adversarial at the administrative level.) I have no doubt that we have much to learn from the Continental systems of procedure, which are less adversarial than ours. But the adversarial system is the system we have, and *ad hoc* modifications which cast an appellate judge, law clerk, or staff attorney in the role of *juge d'instruction* are unlikely to improve the system; they are likely, in fact, to weaken it, for the reasons I have mentioned. Granted, the premises of an adversarial system must be modified when the appellant is a criminal defendant, or is not represented by counsel; but neither of these conditions obtains here. Granted, too, disappointed applicants for social security disability benefits are for the most part rather pathetic people whose plight tugs at the judicial heartstrings; but we are not authorized to give a fuller measure of justice to one class of lawyer-represented civil appellants than to others on grounds of sentiment or sympathy, and it is always well to bear in mind that the payment of government benefits to one applicant reduces the public moneys available for other, perhaps equally worthy, causes.

I would affirm.