**George W. SCHMIDT, Plaintiff–Appellant,**

**v.**

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.**

**No. 98–3380.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1999.

Decided Jan. 20, 2000.

Rehearing and Rehearing En Banc Denied March 24, 2000.

Frederick J. Daley (argued), Chicago, IL, for Plaintiff–Appellant.

Carole J. Kohn (argued), Social Security Administration, Office of General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before BAUER, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

George W. Schmidt appeals the district court's decision upholding the denial of his application for social security disability benefits. Schmidt argues that the Commissioner's determination is not supported by substantial evidence.

Schmidt was born in 1925. After graduating from college in 1954 he began a career which saw him become a senior vice-president at Montgomery Ward, the manager of the Singer Company's North American operations, C.E.O. of the Duplan Corporation, and the owner of his own consulting business. In 1986 he stopped working due to the health problems which form the basis of his social security disability claim.

Schmidt suffers from coronary artery disease, high blood pressure, angina, minimal bilateral carpal tunnel syndrome, osteoarthritis, and the residual effects of a transient ischemic attack.[1] He also cannot handle stress well because of emotional problems that include obsessive-compulsive disorder.

Based on this cocktail of maladies Schmidt has twice filed for disability insurance benefits. His initial 1986 application was finally denied after he unsuccessfully appealed to this court and the Supreme Court denied certiorari. *See Schmidt v. Sullivan*, 914 F.2d 117 (7th Cir.1990), *cert. denied*, 502 U.S. 901, 112 S.Ct. 278, 116 L.Ed.2d 230 (1991). Schmidt's second application was twice denied and remanded before an administrative law judge issued the exhaustive 31–page, single-spaced opinion that the Commissioner adopted and we now review.

In the opinion the ALJ first determined that Schmidt's heart problems left him able to perform light work. He then found that while Schmidt's psychological maladies rendered him unable to continue in the extremely stressful positions he once held—the interaction of Schmidt's physical and psychological infirmities put him at risk of suffering a stroke or heart attack if he were placed in extremely stressful situations—he could still handle a number of easily obtainable low-stress jobs. Thus, since none of his illnesses automatically qualified him for disability under the statute and he could find work given his condition, the ALJ denied Schmidt's claim.

Once this ruling became the Commissioner's final decision, Schmidt filed an appeal in district court. In yet another exhaustive opinion (this one 40 pages long, but double-spaced), Judge Ruben Castillo rejected the appeal. Schmidt now asks that we, too, review the ALJ's decision.

We will uphold an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence. *See Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir.1992). We must examine the entire record, but we cannot reweigh the evidence or substitute our own judgment for that of the ALJ. *See Schroeter v. Sullivan*, 977 F.2d 391, 394 (7th Cir.1992). If reasonable minds can differ as to whether Schmidt is disabled, we must uphold the decision under review. *See Books v. Chater*, 91 F.3d 972, 978 (7th Cir.1996).

Schmidt raises a host of issues on appeal. After examining the record, we conclude that Schmidt's contentions were very ably handled by Judge Castillo in the district court. *See Schmidt v. Callahan*, 995 F.Supp. 869 (N.D.Ill.1998). Thus, rather than retrace his steps we limit our discussion to two issues. Any claims we do not specifically address are denied, as we believe they were properly addressed in the district court.

That said, our review begins with the assertion that the ALJ did not properly evaluate the impact of Schmidt's age[2] on his ability to find new work. Schmidt correctly notes that because he was close to retirement age during the period for which he seeks disability, the ALJ needed to determine that his skills were both "readily transferable" and "highly marketable" to avoid finding Schmidt disabled. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985). Schmidt does not contest that the ALJ made both findings, but he asserts that the judge incorrectly defined the terms to mean the same thing. Schmidt states that in conflating the two, the ALJ adopted a definition of "highly marketable" put forth by the Commissioner, *see* Acquiescence Ruling AR–95–1(6), 1995 WL 259486 (S.S.A.), that conflicts with the defi-

---

1. A transient ischemic attack is a neurologic abnormality of sudden onset and short duration that reflects dysfunction in the arteries supplying the brain with blood. *The Merck Manual of Diagnosis and Therapy* 1420–21 (Mark H. Beers & Robert Berkow eds., 17th ed.1999).

2. Schmidt was 61 in 1986. He's 75 in this, the year 2000.

nition we adopted in *Tom.* Because, according to Schmidt, this constituted legal error, we must overturn the ALJ's decision.

Schmidt's argument hits one immediate wall: we did not define "highly marketable" in *Tom.* Instead, we merely held that the ALJ needed to consider whether an applicant over 60 possessed skills that were highly marketable in addition to skills which were readily transferable. *Tom,* 779 F.2d at 1256–57. As Schmidt does not contest that the ALJ made this finding, his reliance on *Tom*'s holding is misplaced.

Nevertheless, without defining "highly marketable," *Tom* did suggest that the term referred to something more than simply readily transferable skills. *Id.* at n. 11. Some other circuits have since built on this suggestion, holding that for an applicant's skills to be highly marketable they must be so sought after that they compensate for the disadvantage of looking for work at an old age. *See, e.g., Preslar v. Secretary of Health and Human Servs.,* 14 F.3d 1107, 1113 (6th Cir. 1994). Schmidt believes that accepting this definition should compel us to overturn the ALJ's decision. If this is correct, then our determination of Schmidt's appeal would turn on whether the ALJ applied the right definition of "highly marketable."

But this is not the case. At the hearing, a vocational expert (VE) testified that Schmidt's skills were highly marketable because despite his age he would "enjoy an advantage over most other applicants" in his search for employment. As this testimony provides substantial evidence in support of the ALJ's finding that Schmidt's skills were highly marketable no matter which definition of the term we use, we find that the ALJ amply fulfilled his duties and leave the question of the exact meaning of the term "highly marketable" to a case that demands its answer.

■ Schmidt next argues that the ALJ committed legal error by failing to consider (and credit) the testimony of Dr. John M. Williams, who Schmidt presented as a VE to testify whether his (Schmidt's) skills were "transferable." Schmidt points to the ALJ's statement that "Dr. Williams, as he is prone to do, ... exceeded his field of expertise" to support an assertion that the ALJ harbored a prior bias that skewed his evaluation of the offered testimony. Because of this bias, Schmidt asserts the ALJ inappropriately failed to either give weight to Dr. Williams' opinions or to explain why he ignored them.

■ This argument misstates the record. The ALJ's opinion makes clear that he only excluded from consideration those portions of Dr. Williams' testimony in which he overstepped his role and rendered opinions about Schmidt's physical ability to continue to work. This ruling was not inappropriate. The ALJ is under no duty to respect expert opinions that are given outside a witness' field of expertise.

The ALJ's decision, as more fully discussed in Judge Castillo's thorough opinion which is reported at 995 F.Supp. 869 (N.D.Ill.1998), was supported by substantial evidence. Therefore, we affirm the judgment of the district court.