**SPANISH ACTION COMMITTEE OF CHICAGO, Plaintiff-Appellant,**

v.

**CITY OF CHICAGO, Defendant,**

**and**

**Thomas Braham, James Zarno and William Duffy, Defendants-Appellees.**

No. 84–2299.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 8, 1985.

Decided June 27, 1985.

Rehearing Denied July 15, 1985.

Richard M. Gutman, Richard Gutman, P.C., Chicago, Ill., for plaintiff-appellant.

Sharon Baldwin, Asst. Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before WOOD, ESCHBACH and POSNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This section 1983 case concerns a 1966 Chicago Police Department Intelligence Division Security Section operation to infiltrate and disrupt the activities of the Spanish Action Committee of Chicago ("SACC"), a Humboldt Park Puerto Rican group organized to address community problems such as housing, education, police brutality, and community unrest. The suit named the City of Chicago ("City") and three employees of the Chicago Police Department Intelligence Division Security Section—Thomas Braham, James Zarno, and William Duffy—as defendants. The suit charged the individuals in their individual and official capacities with violating SACC's constitu-

tional rights to associate freely and to due process of law by carrying out a secret operation to destroy SACC, its leaders, and its community influence. The jury found that all four defendants had violated SACC's first amendment rights but granted the three individual defendants qualified immunity. The jury awarded $60,000 in compensatory damages but no punitive damages, finding that none of the three individual defendants possessed the state of mind necessary for the award of punitive damages. After denying SACC's motion for judgment notwithstanding the verdict and its motion for a new trial on the immunity and punitive damages issues, the district court judge entered judgment in the amount of $60,000 against the City, the only non-immune defendant.[1]

SACC appeals the grant of qualified immunity to each of the individual defendants and the finding that none of the three individual defendants had the mental state necessary to be held liable for punitive damages. No party has appealed the $60,000 compensatory damages award, nor has the City cross-appealed the grant of immunity to the three individual defendants in an attempt to receive contribution.

## I.

SACC raises several arguments attacking the jury's finding that none of the three individual defendants possessed the mental state necessary for the award of punitive damages. First, SACC attacks the punitive damages instruction and the special verdict question. The judge instructed the jury to award punitive damages if it found that any of the individual defendants acted "knowingly and maliciously to deprive plaintiff of its constitutional rights." The judge then defined a "malicious" act or omission as one "done in reckless or callous disregard of, or indifference to, the rights of plaintiff." The special verdict question on punitives asked whether the plaintiff

---

1. The judge did not instruct the jury separately on the due process claim because she believed the claim to be contained within the first amendment claim. Therefore the jury never returned a verdict on the due process claim.

had proven that defendants acted "knowingly and maliciously."[2]

SACC argues that this instruction and special jury verdict question do not accord with *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) which held that punitive damages may be awarded in a section 1983 action not only when "defendant's conduct is shown to be motivated by evil motive or intent," but also "when it involves reckless or callous indifference." *Id.* at 51, 103 S.Ct. at 1638. First, SACC argues that the instruction's definition of "malicious" as "reckless" is nonsensical and confusing. Second, it argues that even if "malicious" can be sensibly taken to mean "reckless" the judge erred in using the conjunctive conjunction "and" rather than the disjunctive conjunction "or" between "knowingly" and "maliciously" in both the instruction and the special verdict question.

Although we see some merit to SACC's arguments about the punitive damages instruction and special verdict question, and cannot recommend them for use in future cases, we do not order a new trial on punitives in this case because SACC failed to raise these objections to the instruction and special verdict question at trial.

■ Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. (West 1968), states that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We apply this rule in light of its purpose which is to afford the trial judge an opportunity before it is too late, to correct any inadvertent error in charging the jury and thereby avoid costly appeal and remand proceedings. *See Marshall v. Nugent*, 222 F.2d

604, 615 (1st Cir.1955); *see also Mays v. Dealers Transit, Inc.*, 441 F.2d 1344, 1351–52 (7th Cir.1971).

SACC filed its original proposed jury instruction and special verdict question on punitive damages with the district court prior to *Smith v. Wade;* accordingly, the proposed instruction allowed punitives only upon a showing that any or all of the defendants acted knowingly and maliciously. Subsequent to *Wade*, but before trial, SACC filed a revised proposed punitive damages jury instruction and special verdict question in accordance with *Wade*. The revised instruction and question permitted the granting of punitives not only if any of the individual defendants had acted knowingly and maliciously, but also if any of them had acted with callous or reckless indifference to the rights of SACC.

The afternoon before the jury was charged the judge gave the attorneys her proposed jury instructions and special verdict form. The proposed punitive damages instructions and special verdict question apparently did not reflect the changes *Smith v. Wade* required. The next morning, at an 11:00 A.M. instruction conference, SACC's counsel objected to the court's proposed instruction as contrary to *Smith v. Wade*. The judge responded that after she had given the attorneys her proposed instructions she had added the concept of "recklessness" to the definition of "malicious," thus defining "malicious" as "acting with reckless or callous disregard of, or indifference to, the rights of plaintiff." After taking a moment to read the amendment, SACC's counsel said: "I see that. I didn't have that on my page." The attorneys and the judge then proceeded to consider other matters; SACC's counsel made no further mention of the proposed punitive damages instruction or special verdict question ei-

**2.** The jury instruction on punitive read:

To recover punitive damages against an individual defendant, plaintiff must prove by a preponderance of the evidence ... that the actions of that defendant were done knowingly and maliciously to deprive plaintiff of its constitutional rights.

....

... An act or failure to act is "maliciously" done if done in reckless or callous disregard of, or indifference to, the rights of plaintiff.

The special verdict question on punitives read: "Has the plaintiff proved by a preponderance of the evidence that any of the individual defendants acted knowingly and maliciously in depriving the plaintiff of its First Amendment rights?"

ther during or after the instruction conference.

■ SACC argues that it complied with Rule 51 when it objected to the judge's original proposed instruction and it never withdrew this objection. This argument misses the mark, however, because the pertinent question is whether SACC ever objected to the judge's *amended* jury instruction. In fact, the only thing SACC's counsel said regarding the amended instruction was—"I see that. I didn't have that on my page." We do not believe this response constitutes an objection because it did not put the trial judge on notice of plaintiff's disapproval, giving her an opportunity to correct the alleged error. *See Marshall v. Nugent,* 222 F.2d at 615.

■ SACC also argues that even if it failed to make a timely objection to the amended jury instruction it should be excused because its counsel was not given sufficient time to consider the amendment and object to it. Although it may be true that SACC's counsel did not have sufficient time to consider and object to the amendment during the 11:00 A.M. instruction conference when it was first brought to his attention, he did have sufficient time to examine the amendment later, either during the forty-five-minute lunch recess or during the brief afternoon recess taken between the end of closing argument and the charging of the jury. In view of these opportunities to examine the amendment we cannot excuse SACC's failure to make a timely objection.

■ Although SACC has not argued the point, a court may, in exceptional circumstances, order a new trial in a civil case for an error in instructions even though not objected to at trial. *See Parrett v. City of Connersville, Ind.,* 737 F.2d 690, 698 (7th Cir.1984), *cert. dismissed,* — U.S. —, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *Exxon Corp. v. Exxene Corp.,* 696 F.2d 544, 549 (7th Cir.1982), and cases cited therein ("Plain Error Rule"). We are extremely

reluctant to employ this exception to Rule 51 however, because to do so contravenes both the language and intention of Rule 51. The language of Rule 51 provides for no exception to the timely objection requirement and this lack of an exception in the Civil Rules is especially conspicuous when juxtaposed to the express exception to the timely objection rule in the Criminal Rules. *See* Fed.R.Crim. P. Rule 52(b), 18 U.S.C.A. (West 1976) ("Plain Error Rule"). Rule 51 is intended, as stated before, to encourage parties to raise all possible points at trial so that trial courts will have an opportunity to correct them and thereby eliminate the necessity of costly appeal and remand proceedings. To the extent we allow appeals of unobjected to instructions we undermine the rule's efficacy; we therefore employ the exception rarely and only in exceptional cases. *See Parrett,* 737 F.2d at 698; *Exxon,* 696 F.2d at 549. Finding no exceptional circumstances in this case we refuse to ignore the dictate of Rule 51.

■ SACC also appeals the trial judge's denial of its motion for judgment notwithstanding the verdict ("J.N.O.V.") or, in the alternative, for a new trial on the issue of punitive damages. Our review of the denial of the J.N.O.V. motion is limited to considering whether under the law as established by *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed. 632 (1983) there was an adequate evidentiary basis for a decision denying punitives, that is, whether there was an adequate evidentiary basis for finding that the three individual defendants did not act maliciously or with reckless indifference to the rights of SACC.[3] In making this determination we must view the evidence in the light most favorable to the prevailing three individual defendants and give them the benefit of all reasonable inferences. *See Freement v. Franzen,* 695 F.2d 485, 488 (7th Cir.1982), *cert. denied,* 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983). A court may not weigh the evidence or pass on the credibility of witnesses. *Id.* An appellate court is as well

**3.** We look to the law actually applicable to the case as given in *Smith v. Wade* rather than the law as announced in the instruction and special verdict form in deciding whether judgment

should have been granted notwithstanding the verdict. *See Dual Manufacturing & Engineering, Inc. v. Burris Industries,* 619 F.2d 660, 662–63 (7th Cir.1980) (en banc).

situated as a trial court to make this legal determination and we therefore review the trial court's decision denying the J.N.O.V. motion de novo. *See* 9 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2524, p. 542 (1971), and cases cited therein.

▇▇ Our review of the trial transcript convinces us that there was sufficient evidence from which a jury could find that Braham and Zarno did not act maliciously or recklessly toward SACC, but rather acted out of a sincere belief that their actions were legal, proper, and in the Humboldt Park Community's best interest. The jury heard the following testimony from which it could have concluded that the individual defendants did not act maliciously or with reckless disregard for the rights of the SACC: that in 1966 Humboldt Park was the location of several riots which resulted in burning, looting, and other destruction (Tr. 12–13, 91–93, 173, 461), and the arrest of 300 to 400 persons (Tr. 90); that defendant Braham was a member of the Police Department Intelligence Division (Tr. 132) assigned to the Humboldt Park area (Tr. 162) and attended several meetings of the SACC where he identified himself as a police officer (Tr. 176–77); that through his contacts with the group Braham learned that several members of the SACC (Mr. and Mrs. Ramirez and Guitard Rodriguez among others) were concerned that SACC was being used as a catalyst device to create violent confrontations such as riots, and for this reason they were getting out of the organization (Tr. 191–92, 444–46); that Police Officer Olivieri warned Braham to be careful if he was doing anything with SACC because he was convinced that one of the leaders, Juan Diaz, was ready to get guns and to get some people involved in a violent confrontation (Tr. 446–47); that Braham had read an article in the *Chicago Daily News* reporting that Tony Cardado, a local businessman, thought the SACC was going up for grabs and that a group from New York City would push it into the streets again (Tr. 451–52); that Braham also knew that Obed Lopez Sacarias, an attendee at SACC meetings, had been arrested during an August 1st and 2nd riot with three others, one of whom had a gallon of gasoline and a "T-shirt wick" which he was apparently ready to drop on a police squad car parked below (Tr. 459–64); that Braham introduced Officer Zarno to SACC as Dr. Baron, an expert in public relations (Tr. 193); and that the decision to conceal Zarno's identity was made by Braham's superiors (Tr. 196). Finally, the jury learned that in 1966 an Illinois statute made it illegal to be a knowing member of a group which advocates the overthrow of government by violence or unlawful means (Tr. 337–38) and that according to SACC's own expert witness, former Police Superintendent Richard J. Bryeczch, it may have been legitimate, according to police practice in 1966, to expose an organization in the media for its politics (Tr. 331). Taken together the foregoing testimony provides a sufficient basis for a reasonable person to conclude that Braham and Zarno acted to prevent violence and outside infiltration of SACC and had a sincere belief that their actions were legal and proper. To be sure, evidence was presented from which a jury could have concluded that Braham and Zarno acted maliciously or recklessly to deny SACC's rights, but this only means that there was a jury question and we do not weigh the evidence in ruling on a J.N.O.V. motion.

Defendant Duffy, the third individual from whom SACC seeks punitives, was director of the Intelligence Division of the Chicago Police Department (Tr. 308). He had 100 to 120 persons under his command in 1966 (Tr. 526) and, although he had notice of the unconstitutional conduct of Zarno and Braham (Tr. 308–09), SACC has not pointed to any evidence of his direct, active involvement in the planning or carrying out of the activities of Zarno and Braham. In view of Duffy's limited and passive involvement in the activities of Braham and Zarno, a reasonable jury could find that the evidence was insufficient to establish that Duffy acted maliciously or recklessly toward SACC.

## II.

▇▇ SACC also appeals the district court's denial of its motion for a new trial.

The authority to grant a new trial is confided almost entirely to the discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). In ruling on a motion for a new trial, unlike a J.N.O.V. motion, the judge may consider the credibility of the witnesses, the weight of the evidence, and anything else which justice requires. *Garrison v. United States,* 62 F.2d 41, 42 (4th Cir.1932); 9 C.A. WRIGHT & A.R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2531, pp. 575–78 (1971). The trial judge, who heard the testimony and conducted all pretrial and trial proceedings, was uniquely situated to rule on this new trial motion. Thus the grant or denial of a motion for a new trial is not subject to review by this court except where exceptional circumstances show a clear abuse of discretion. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.,* 695 F.2d 281, 288 (7th Cir.1982). SACC does not point to any exceptional circumstance here, nor do we find any, and we therefore uphold the district court's denial of the motion for a new trial on punitive damages.

### III.

SACC raises several points attacking the jury grant of immunity to the three individual defendants. SACC argues that the judge erred in not instructing the jury separately on SACC's due process theory and that this error may have affected the jury's immunity finding.[4] SACC also argues that the judge erred in refusing to grant its J.N.O.V. motion regarding immunity because defendants failed to properly plead or prove the appropriate immunity defense and because evidence was presented to support a finding that they were not entitled to immunity under *Harlow v. Fitzgerald,* 457

U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■■■ We need not reach these arguments, however, because our affirmance of the jury's special verdict finding that the defendants did not possess the mental state required to be held liable for punitives moots the immunity issue as far as SACC is concerned. That is, once punitives are removed from consideration the only effect reversing the jury grant of immunity would have would be to increase the number of defendants jointly and severally liable for compensatory damages. This would not, however, increase SACC's recovery because compensatory damages can only be collected once and the City, the non-immune party defendant, has a pocket deep enough to alone satisfy the $60,000 compensatory damage judgment.[5]

Accordingly we AFFIRM the judgment of the district court.

---

4. SACC's due process theory is that in disrupting and harrassing the SACC the police punished the organization without lawful authority. It argues that this claim is not contained within the first amendment claim with respect to immunity even though it involves the same police conduct because a jury might have believed that a police officer should be more aware of the law

regarding the boundaries of his lawful authority than the law regarding the first amendment.

5. Although the City has an interest in the immunity of the individual defendants since the more parties jointly liable the smaller proportion it will have to pay on the compensatory award, it has not cross-appealed against any of the individual defendants for contribution.