Norris J. COULTER, Plaintiff–Appellee,

v.

Michael VITALE, individually, and as a Police Officer for the Village of Oak Park, Defendant–Appellant.

No. 88–3391.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1989.

Decided Aug. 25, 1989.

James J. Gavin, Gavin & Gavin, Westchester, Ill., for plaintiff-appellee.

Robert C. Yelton, III, Philip J. McGuire, Joel S. Ostrow, Dowd & Dowd, Chicago, Ill., for defendant-appellant.

Before COFFEY, RIPPLE, and MANION, Circuit Judges.

MANION, Circuit Judge.

Norris J. Coulter sued various defendants, including Officer Michael Vitale of the Oak Park, Illinois Police Department, for allegedly violating Coulter's civil rights. These alleged violations were connected with Vitale's investigation of a traffic accident involving Coulter. The jury found for Coulter and against Vitale, awarding Coulter $10,000 in compensatory damages and $20,000 in punitive damages. The only issue upon appeal is whether these punitive damages were properly awarded. We affirm.

## I.

Norris Coulter sued Oak Park Police Officer Michael Vitale for, among other things, damages for injuries suffered as a result of Vitale's alleged unreasonable and excessive force against Coulter while he was in police custody. Coulter alleged at trial that Vitale and at least one additional officer had manhandled Coulter. Coulter and Vitale have offered dramatically different versions of the facts in this case, but the following appears undisputed.

Coulter and Dianne Schmidt were involved in an auto accident with one another in Oak Park, Illinois, at approximately 1:30 in the morning on January 28, 1986. Officer Vitale found Coulter at the accident scene, and Coulter and Schmidt accompanied Vitale in a police car to the Oak Park police station. At the station, Coulter refused Vitale's request to sign two traffic citations.

When permitted to leave the station, Coulter went to West Suburban Hospital's emergency room. There Coulter was attended to by emergency room Nurse Sandra S. Watson at or after 4:01 a.m. Coulter provided a urine sample, which was positive for blood. Later that same date, Dr. Ralph J. Kenck examined Coulter. Dr. Kenck confirmed that Coulter's right testicle was swollen, and Kenck's deposition opinion was that various injuries on Coulter's body were neither self-inflicted nor caused accidentally, but were consistent with Coulter's having been beaten, struck, scratched or kicked.

Beyond this, the evidence is in sharp conflict as to what happened. Because Vitale concentrates his argument on the sharply conflicting evidence, we will look at each side's version of what happened to put his claim in perspective.

*Coulter's version*

Coulter recounts that while he was driving within the speed limit his auto was rear-ended by another, which had been traveling at a high rate of speed. When both drivers then stopped their vehicles, the other driver (Dianne Schmidt) was upset and crying. Officer Vitale subsequently arrived, appearing irritated. The three departed for the Oak Park police station in the police car.

During this trip Vitale ordered Coulter to extinguish a cigarette Coulter was smoking. Unable to roll down the window, open the doors, or find an ashtray, Coulter was unable to extinguish his cigarette. Vitale then parked his vehicle, ran to the rear door, and grabbed Coulter, knocking the cigarette from Coulter's mouth.

At the station Vitale asked Coulter to sign two traffic citations, and upon Coulter's refusal Vitale threw the ticket book which hit Coulter on his chin. Vitale then kicked Coulter and slapped Coulter on the head. Vitale later was accompanied by an unidentified second officer, who joined Vitale in kicking, punching and slapping Coulter. Coulter was punched on the head, back, chest, and side for a total of 20 to 30 punches. Both officers slapped Coulter repeatedly on the head and face, and both kicked Coulter in his groin, stomach, chest, and elsewhere. One officer struck Coulter with a telephone book approximately six times on his chest and on the rear of his head. Choked twice, Coulter also was scratched on the back and face, and stabbed in the neck with a pen. Handcuffed, Coulter was thrown against a wall six to eight times. The officers then dragged Coulter to a holding cell, where they threw him in by the handcuffs and back of his neck, and began to punch and kick him anew.

Coulter was permitted to leave the holding cell only after posting a $50 bond. An Officer Harris told Coulter that "a lot of people got a real bad attitude around here." Once permitted to exit the station, Coulter remained at the West Suburban Hospital for approximately two hours. At the hospital, Sergeant Scianna of the Oak Park Police Department visited Coulter, pointed his finger at him and said, "you come back and see us again sometime."

*Vitale's version*

Vitale's testimony and evidence presents a completely different picture. Vitale recounts that before the collision with Schmidt, Coulter was driving his car errati-

cally. Coulter had consumed three beers at a Forest Park tavern. Coulter was sarcastic toward Vitale. During their drive to the police station Vitale merely opened Coulter's door to allow Coulter to drop his cigarette from the car.

At the police station Vitale did not manhandle Coulter, who indeed departed the station only about five minutes after Schmidt did. Harris processed Coulter's bond. Harris observed no manifest injury to Coulter, nor did Coulter complain. Coulter appeared normal.

Coulter's cabdriver to the West Suburban Hospital neither remembered Coulter complaining during his trip, nor saw any injuries upon Coulter. Coulter walked satisfactorily. In the emergency room Coulter was ambulatory without a limp, alert, and oriented as to person, place, and time. Coulter had a strong odor of alcohol, and admitted to drinking. Sergeant Scianna reached the hospital after Nurse Watson telephoned the police. Scianna made no remark to Coulter about coming back to see the police, but Coulter instead told Scianna to get out of Coulter's face. Dr. Kenck knew Coulter socially.

According to Vitale, Coulter solicited Mary Ann Liptay, mother of a child by Coulter, to perjure herself that Vitale had verbally abused Coulter, and had said he was "going to get" Coulter. Coulter told Liptay that Coulter would profit from the lawsuit, and would share these profits with Liptay. Coulter threatened that if Liptay did not testify on Coulter's behalf, he would kill her.

## II.

In his complaint Coulter named as defendants Vitale, unknown police officers, and the Village of Oak Park. Coulter alleged violation of his civil rights under 42 U.S.C. §§ 1981, 1983 and 1988, seeking $20,000 in actual damages and $500,000 in punitive damages against all defendants jointly. Coulter's second count alleged various common-law causes of action and sought the same amount of damages. Trial by a jury began on October 24, 1988.

At the close of evidence the district court denied Vitale's motions for a directed verdict upon each count of the complaint, but reserved ruling upon Vitale's motion for a directed verdict relative to punitive damages. The court instructed the jury to consider punitive damages, and indicated that the standard of proof for all damages was by a preponderance of the evidence. Upon its own motion, the district court dismissed the unknown police officers, and granted the Village's motion for a directed verdict. The jury returned its verdict in favor of Coulter and against Vitale in the sum of $10,000 in compensatory damages and $20,000 in punitive damages. Subsequently, the district court denied Vitale's motion for a directed verdict relative to punitive damages. Vitale appeals.

## III.

On appeal, Vitale does not challenge the compensatory damage award. With regard to punitive damages, however, Vitale complains that the district court should have instructed the jury that proof of an award of punitive damages would have to be on the basis of clear and convincing evidence as opposed to a mere preponderance of the evidence. Vitale acknowledges that the court correctly instructed the jury that compensatory damages must be justified by a preponderance of the evidence. However, the court, when giving the punitive damages instruction, stated:

> The plaintiff also claims that the acts of the defendants were done willfully, intentionally, or with callous and reckless indifference to plaintiff's right so as to entitle him to an award of punitive damages in addition to compensatory damages.
>
> If you find for the plaintiff, and if you further find that any defendant—or this defendant did act with malice, willfulness or callous and reckless indifference to the rights of others, the law would allow in your discretion to assess punitive damages against the defendants as punishment and as a deterrent to others.
>
> If you find that punitive damages should be assessed against the defendant, you

may consider the financial resources of such defendant in fixing the amount of such damages.

This punitive damage instruction contains no separate standard of proof. Vitale now insists that under Illinois law and under § 1983 the burden of proof should have been the "clear and convincing" standard, a higher standard of proof than that required under preponderance of the evidence.

█ A jury may award punitive damages in § 1983 actions if it finds conduct motivated by evil intent or callous indifference to the federally-protected rights of plaintiffs. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir.1989). The scope of punitive damages in § 1983 actions is controlled by a federal common law of damages imposing uniformity in enforcing the Civil Rights Acts. *Id.*

To date, this circuit has not taken a position on the standard of proof required for punitive damages in a § 1983 case. In *Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315, 318 n. 2 (7th Cir.1985), this court quoted a contested punitive damages instruction that required proof only by a preponderance of the evidence. However, the court observed "[a]lthough we see some merit to [plaintiff's] arguments about the punitive damages instruction ..., and cannot recommend [it] for use in future cases, we do not order a new trial on punitives in this case because [plaintiff] failed to raise these objections to the instruction ... at trial." *Id.* at 318.

█ Rule 51 of the Federal Rules of Civil Procedure provides that "no party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of objection." We apply this Rule to allow trial judges the opportunity to correct any errors in charging the jury and to avoid costly and time-consuming appellate proceedings. *Spanish Action Committee of Chicago*, 766 F.2d at 318. Rule 51 promotes judicial economy. *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 794

(7th Cir.1989). It is fundamental that on appeal to this court a litigant is restricted to those arguments which already have been raised at the district court level. *U.S. v. Protex Industries, Inc.*, 874 F.2d 740, 745 (10th Cir.1989).

█ At the trial level, Vitale failed to urge the judge to give a jury instruction supporting a higher standard of proof regarding Coulter's punitive damages claim. During the jury instruction conference Vitale failed at any time to object to Coulter's jury instruction concerning the burden of proof. Vitale's proposed instructions for the jurors did not call for a higher standard of proof for awarding punitive damages.

Toward the conclusion of the instruction conference, the court had the following discussion with Vitale's attorney.

> The Court: ... the remainder of the instructions both parties have offered the same instructions, punitive and the state law claims.
>
> Mr. Yelton: Well, as far as the inclusion of punitive for now there will be later motion activity, of course, directed at the issue.
>
> The Court: I understand that. But I mean if I sustain punitive, if punitive goes to the jury, there seems to be no disagreement of the parties that this is the appropriate instruction.

Vitale's attorney did later argue his motion that the court not allow the issue of punitive damages to go to the jury. That motion was ultimately overruled. But Vitale never objected to the punitive damages instruction itself—whether it was a proper statement of the law—in the event the jury did consider punitive damages.

This court sharply distinguishes between an objection against punitive damages instructions being given at all, and an objection to the content of such a punitive damage instruction. *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1295 (7th Cir.1987). There is no doctrine of "plain error" protecting parties in civil cases from erroneous jury instructions to which no objection was made at trial. *Deppe v. Tripp*, 863 F.2d 1356, 1362 (7th

Cir.1988). As stated in *Williamson*, "[defendant] did not object to this [punitive damage] instruction. It objected to giving any instruction at all, which is not the same as objecting to the language of the instruction given. The objection must be sufficiently detailed to draw the court's attention to the defect. A blunderbuss objection does not do this." 817 F.2d at 1295.

In hindsight, Vitale attempts to read into the record more than it contains. Vitale's argument supporting his motion for a directed verdict regarding punitive damages simply asserted that the evidence was insufficient to support such an award, ignoring a standard of proof problem. Vitale's counsel merely argued to the district court that the parties' testimony was so diametrically different as to render it "manifestly unfair" to allow jurors to consider a punitive damages award without further direct evidence supporting the plaintiff's side.[1] Again, he objects to the jury's consideration of the issue, not to the law it is to follow if it does consider punitive damages.

Vitale's Memorandum of Law in Support of Motion for Directed Verdict (argued after the trial) states "Prior to the jury's retirement defendant moved ... for a directed verdict on the *issue of liability* for punitive damages." (Emphasis added.) His memorandum goes on to state "... punitive damages should not be awarded lightly, but only when there is a factual basis in the record commensurate with the seriousness of the charge made." Vitale could not, through these arguments in support of his directed verdict motion, preserve for appeal the jury instructions' higher standard of proof for award of punitive damages claim. *Cf. Williamson*, 817 F.2d at 1295.

Vitale's claim here that Coulter ought to have been held to a higher standard of proof was not built-in to Vitale's district court-level claim of evidence inadequate to warrant submission of the punitive damages question to the jurors. *Cf. Bob Willow Motors, Inc.*, 872 F.2d at 795. At the district court level he simply failed to clearly argue, as required, for the higher standard of proof of Coulter's punitive damages claim.

■■■■ Once the law of the case has been settled by failure to object to jury instructions, parties may argue only whether the jurors have performed their proper function. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985). Because a jury's role is to apply its instructions to the facts, we may scrutinize its conclusions only to ascertain whether it did so. *Id.* Although the evidence was sharply conflicting, Coulter's testimony, coupled with Dr. Kenck's testimony and other evidence, provided sufficient evidence for the district court to allow the jury to address the award of punitive damages to Coulter.

### IV.

The district court permitted the jury to consider (and it found) punitive damages. Vitale then objected to allowing the jury to consider the issue. Now he claims that the court's punitive damages instruction contained the wrong standard of proof. This objection to the law contained in the instruction was not properly preserved at trial, and Vitale's punitive damages argument is therefore waived. The judgment of the district court is

AFFIRMED.

---

1. This was the October 25, 1988, argument by Vitale's counsel in support of his motion to delete the jury's consideration of a punitive award:

   As I indicated previously, the testimony in this case is polarized, obviously. And were there any suggestion of primary corroborative evidence to support Mr. Coulter's story, I'd be in a position to suggest that perhaps that might even be appropriate for the jury to consider whether or not a punitive award is merited. But when you have only the statement of the plaintiff without any other aspect of direct evidence in support of a very important aspect of the claim, I again respectfully suggest to the Court that it is manifestly unfair to make the remaining defendant defend the remaining claims in that posture.

   Coincidentally, it also would impact on the jury verdict form.