In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-2067

KAREN R. HIRLSTON,

*Plaintiff-Appellant,*

*v.*

COSTCO WHOLESALE CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:17-cv-04699-TWP-MPB — **Tanya Walton Pratt**, *Chief Judge.*

ARGUED FEBRUARY 7, 2023 — DECIDED SEPTEMBER 1, 2023

Before HAMILTON, BRENNAN, and JACKSON-AKIWUMI, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Karen Hirlston worked for several years as the Optical Manager at a Costco store. Hirlston has disabilities that make it hard for her to bend, walk, and stand. In 2015, Costco planned to remodel the optical department in a way that would make it more difficult for Hirlston to continue working in that job. The parties discussed accommodations, including work restrictions

designated by Hirlston's doctor. Costco determined that no accommodations would allow Hirlston to continue as Optical Manager after the remodeling. Costco also decided that she had not been carrying out the essential functions of her job before the remodeling. She had been acting contrary to her doctor's restrictions and delegating to other employees tasks that Costco believed were essential for her to carry out herself. Costco placed Hirlston on involuntary leave and later assigned her to a different job paying less money.

Hirlston filed this suit under the Americans with Disabilities Act (ADA) against Costco for disability discrimination and retaliation. See 42 U.S.C. §§ 12111(8), 12112, & 12203(a). A jury ruled against her, finding that she was not qualified to do the Optical Manager job at the critical time, in November 2015. Hirlston has appealed. She argues that the trial court used an improper special verdict form, gave an erroneous jury instruction on the central issue of being qualified for the job, and erred by allowing Costco to show the jury two photographs that it had not timely disclosed in discovery.

We affirm. First, the special verdict form simply was not erroneous. Second, Hirlston forfeited her appellate challenge to the jury instruction by failing to make a timely objection. On plain-error review, we find that the key instruction included an error, at least in the abstract, but we are not convinced the error harmed Hirlston's case so as to require a new trial despite her forfeiture. Finally, the judge did not abuse her discretion by allowing both plaintiff and defendant to introduce a few photographs of the workplace that had not been disclosed in discovery.

I.  *Factual and Procedural Background*

　　A.  *Hirlston's Job as Optical Manager*

Since Hirlston's childhood, she has lived with disabilities that render her unable to lift significant weights, to stand for long periods of time, or to walk without a cane. Hirlston found a job at a Costco store in Indianapolis in its optical department. She quickly earned a promotion to Optical Manager. Five years into her tenure, though, Costco announced a plan to remodel the optical department. Before the remodel, computer monitors for handling customer orders and other information had been placed on countertops. With that arrangement, Hirlston could sit down to work with customers. Part of the planned remodeling was to build computer monitors directly into the counters to keep others from seeing customers' confidential health information. The arrangement would have required Hirlston to stand much longer than she could tolerate.

Hirlston approached Costco management to discuss possible accommodations that would enable her to continue as Optical Manager. Costco asked Hirlston for her doctor's restrictions. These included significant limits on bending, stooping, and kneeling, as well as lifting, standing, and walking. These restrictions were not consistent with Costco's view of the essential functions of an Optical Manager, both before and after the remodeling of the department. Costco thought the Optical Manager would need to be able to bend, stoop, and kneel occasionally, less than two and a half hours per day. Hirlston's doctor said she could "never" bend, stoop, or kneel. Costco thought the Optical Manager would need to be able to lift ten pounds or more, but Hirlston's doctor said she should not lift more than five pounds. Costco thought the Optical

Manager would need to stand two and a half to five hours per day. Hirlston's doctor said she could stand no more than fifteen minutes at a time. And Costco thought the Optical Manager would need to walk two and a half to five hours per day. Hirlston's doctor said she could walk no more than ten minutes at a time.

B.  *Discussions About Reasonable Accommodations*

Hirlston proposed several accommodations that she said would enable her to perform the job's essential functions, including a seated workstation so she could sit, polarized computer screens so no one else could directly see customer information, and a "grabber" so she could reach items on or close to the floor. Costco found that, even with Hirlston's proposed accommodations, the Optical Manager job requirements would still have conflicted with her doctor's restrictions, so that her proposed accommodations would not have been reasonable.

Since Costco thought no accommodations could keep Hirlston in her Optical Manager job, it placed her on a leave of absence while she tried to find another job with Costco. Some months later, after updating her medical restrictions, Hirlston found a job at a different Costco location, but with less responsibility and lower pay. Hirlston later filed a charge with the EEOC, received a right-to-sue letter, and sued Costco for discrimination and retaliation in violation of the ADA.

C.  *The Trial*

At the three-day trial, the central dispute was whether any reasonable accommodation could have allowed Hirlston to perform the essential functions of an Optical Manager without violating her doctor's restrictions. Hirlston argued that if

Costco had not rushed to put her on leave, it would have identified one, such as a powered sit-to-stand wheelchair. Costco disagreed. It argued that Hirlston's doctor's restrictions made her unqualified for even her current job without "workarounds," like asking other employees to do some of her work, that Costco thought were improper. Costco argued that it had provided Hirlston reasonable accommodations in the form of a leave of absence and reassignment to her new job. See 42 U.S.C. § 12111(9)(B) (reasonable accommodation may include "reassignment to a vacant position").

The jury found for Costco, answering on a special verdict form that Hirlston had not shown she was qualified to do the Optical Manager job in November 2015. The district court denied Hirlston's post-trial motions and entered judgment for Costco.

II. *Analysis*

A. *The Verdict Form*

The jury verdict form included the same first question for Hirlston's ADA claims for discrimination and failure to accommodate: "Was Ms. Hirlston qualified to perform her job as an Optical Department Manager in November 2015?" Hirlston argues on appeal that the question should have read differently.

1. *Whether Plaintiff Preserved Her Objection*

The parties debate whether Hirlston preserved her objection to the verdict form. Federal Rule of Civil Procedure 51(b) requires the district court to inform the parties— before the court instructs the jury and before closing arguments—how it intends to instruct the jury. It must also give counsel an opportunity to register any objections. For purposes of Rule 51,

a verdict form is part of the jury instructions. See *Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 683–84 (7th Cir. 2006) (applying Rule 51 to verdict form); *Ayuyu v. Tagabuel*, 284 F.3d 1023, 1026 (9th Cir. 2002) (same).

Rule 51(c) requires that objections to instructions and verdict forms be stated distinctly with supporting grounds. Objections are timely if made during the opportunity the court is supposed to provide under Rule 51(b). If the judge fails to provide an opportunity for a timely objection, however, an objection is timely if "the party objects promptly after learning that the instruction or request will be, or has been, given or refused." Fed. R. Civ. P. 51(c)(2); see also 7th Cir. R. 56(a) ("Opportunity to Object and Make Proposals on the Record"). If no timely objection is made, a court may consider a "plain error" in the instructions if the error has affected "substantial rights." Fed. R. Civ. P. 51(d)(2).

The record here shows that Hirlston made a timely objection to the verdict form because the court did not give counsel an opportunity to object before the court instructed the jury and provided the verdict form. The parties disputed the verdict form all through the trial. Even after closing arguments, the form had not been finalized. The judge then instructed the jury and sent the jurors to the jury room as their lunches arrived. While the jurors were presumably having lunch, the judge and lawyers continued to discuss the verdict form. The judge had urged the attorneys to agree on a verdict form but also said she was "inclined to give Costco's version." Hirlston objected, claiming Costco's version did not track the jury instructions. The judge responded, "I'll let you know." After more debates over the verdict forms, the judge provided a

final chance "to get together and give me a verdict form. And if not, I'll just use the one that I want to use."

Counsel never agreed on a verdict form. The court submitted its own version to the jury. About two hours later, the jury reported that it had reached a verdict. Before the verdict was returned, the court noted on the record that counsel had been unable to agree and that the court had drafted its own version of the verdict form. Neither counsel saw the final verdict form before the jury began deliberations. When the jury returned its verdict, the only question it answered was the question whether Hirlston was qualified for her job as Optical Manager in November 2015. The jury answered "no" and did not proceed further. Under Rule 51, because there was no opportunity to register objections to the form the court actually gave to the jury, Hirlston did not forfeit her objection to the verdict form.

### 2.  *The Claimed Error*

The verdict form was not erroneous, however. The form given to and returned by the jury asked: "Was Ms. Hirlston qualified to perform her job as an Optical Department Manager in November 2015?" Hirlston argues that the question should have had the following italicized phrase added: "Was Ms. Hirlston qualified to perform her job as an Optical Department Manager in November 2015 *either with or without the reasonable accommodations*?"

Under the ADA, an employee with a disability is qualified for a position if she can perform the essential functions of the position with or without reasonable accommodations. 42 U.S.C. § 12111(8). The jury instructions included the reasonable accommodation point in the definition of "qualified,"

as we discuss below. A question on a verdict form need not define or explain again terms that have already been adequately defined or explained in the jury instructions. *EEOC v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012) ("In evaluating whether a verdict form is confusing or misleading, we consider the verdict form in light of the instructions given to determine 'whether [the jury] had [an] understanding of the issues and its duty to determine those issues.'"), quoting *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 827 (7th Cir. 2010). The question on the verdict form thus did not need to include all the nuances of the concept, including the important reasonable accommodation point. In fact, the question in the judge's verdict form here tracked closely the question in the special verdict form included in this circuit's pattern jury instructions for ADA claims: "Was Plaintiff qualified to perform [his job] [the job he sought]?" Seventh Circuit Civil Pattern Instruction 4.15(2).[1]

B.  *The Jury Instructions*

    1.  *Whether Plaintiff Preserved Her Objection*

The parties also debate whether Hirlston preserved her objection to the jury instruction on reasonable accommodations. Applying Rule 51 again, we conclude she did not. The evening before the final day of trial, counsel met with the district judge off the record to discuss the final jury

---

[1] Hirlston's version of the question also posed two further problems. First, her phrase "with or without *the* reasonable accommodations" seems to refer to some particular accommodations without identifying which ones. Second, the proposed phrase also seemed to ask the court to declare certain proposed accommodations to have been reasonable when those issues were disputed.

instructions. The next morning, Hirlston's counsel modified their position on the instruction defining "qualified" under the ADA. Her counsel asked that the final jury instructions define "qualified" generically to mean she could do the job's essential functions "with or without reasonable accommodation," without any reference to who had proposed any accommodations or when. Costco's lawyer agreed to that change, and the court agreed to make those revisions. Later, the court said that it had made Hirlston's requested revisions. That was a mistake, however. The court had not made that change that both counsel had agreed upon. The problem is that neither Hirlston's counsel nor anyone else noticed the oversight. Hirlston's lead lawyer said, "I'm reviewing it now." That was also a mistake. She apparently was reviewing not the definition of "qualified" but a different instruction. Thus, Hirlston's counsel continued to discuss other matters, apparently without detecting or objecting to the oversight on the definition of "qualified."

The misunderstanding here was unfortunate but not unprecedented. Similar events unfolded in *Spanish Action Committee of Chicago v. City of Chicago*, 766 F.2d 315 (7th Cir. 1985). The governing law (on the standard for punitive damages) changed during trial, so the plaintiff submitted a revised instruction accurately stating the law at the end of the trial. *Id.* at 318. But the court gave an instruction that did not reflect the changes the plaintiff requested. The court told counsel incorrectly that it had made only certain changes but not others. The plaintiff's counsel replied, "I see that," and failed to object to the unchanged jury instruction because the lawyer was looking at the wrong language. After losing at trial, the plaintiff appealed. We held that the plaintiff's objections to an earlier version of the punitive damages instruction did not

preserve objections to the court's amended jury instruction as given. *Id.* at 319; accord, *United States v. Hollinger*, 553 F.2d 535, 544–45 (7th Cir. 1977) (failure to make timely objection to district court's erroneous reading of final instruction precluded review under earlier version of Fed. R. Crim. P. 30(d) that did not expressly authorize plain-error review for forfeited errors).

As in *Spanish Action Committee*, Hirlston proposed a revised instruction, which the district court inaccurately said it had revised. Hirlston then failed to object, perhaps because her counsel were reviewing the wrong final instruction. As in *Hollinger*, we can assume that Hirlston's counsel thought the court would instruct the jury in accord with its description of the revisions. Still, counsel needed to check the actual final instructions presented to them, notwithstanding the judge's erroneous or incomplete description of revisions. See *Hollinger*, 553 F.2d at 544–45. To be timely, any objection to the final instructions needed to be made before the instructions were given and before the jury retired to deliberate. *Id.* at 545.

Citing *Schmitz v. Canadian Pacific Railway* again, however, Hirlston argues that she had no fair opportunity to object to the wording of the final version of the instruction. See 454 F.3d at 683–84. Hirlston contends that she had only one minute to review the proposed jury instructions. She notes that she received final jury instructions at 11:19 a.m., and that the lawyers and the judge went on the record to discuss them at 11:20 a.m. That does not mean only one minute elapsed between discussion and agreement. An earlier morning conference on instructions consumed about 32 pages of transcript. R. 185 at 510–42. After testimony of one last witness and arguments on legal motions, the teams of lawyers then spent roughly fifteen

minutes, starting at 11:20 a.m., discussing with the judge the very-last-minute amendments to the jury instructions, which are the ones at issue on appeal. Hirlston's attorneys divided responsibility between reviewing instructions and objecting to errors. As the court explained, "You've got several lawyers, so one lawyer needs to work on getting the instructions while the other argues." That was not unreasonable given the press to send the case to the jury. "[A]lthough the opportunity to object in the time provided by Rule 51 was short in this case, the opportunity was nonetheless there." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 435 (7th Cir. 2009). Hirlston failed to preserve her objection to the final instruction on the issue of being qualified for her job.

"When a party fails to object to an instruction, the court will reverse only if there was a 'plain error affecting substantial rights.'" *Id.* at 433, citing Fed. R. Civ. P. 51(d)(2). Plain error under Rule 51(d)(2) requires that "(1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Walker v. Groot*, 867 F.3d 799, 803–04 (7th Cir. 2017), quoting Fed. R. Civ. P. 51, 2003 note, citing in turn *Johnson v. United States*, 520 U.S. 461, 466–67, 469–70 (1997); see also, e.g., *Ammons–Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 488 F.3d 739, 751 (7th Cir. 2007) (finding no plain error in jury instructions).

When plain-error review for forfeited objections to civil jury instructions was introduced in amendments to Rule 51 in 2003, the Advisory Committee notes signaled clearly that the standard for plain-error reversal in a civil case would be even more difficult to satisfy than in a criminal case. The notes

recognized that "the context of civil litigation often differs from the context of criminal prosecution" and that "actual application of the plain-error standard takes account of the differences." Fed. R. Civ. P. 51, 2003 note. We said in *Walker*, "The clear implication is that the standard is more difficult to satisfy in civil cases, at least where liberty is not at stake and where the public interest at stake may be minimal." 867 F.3d at 804 n.2; see also *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc) ("our ability to review for plain error in civil cases is severely constricted, as a civil litigant should be bound by his counsel's actions,") (cleaned up), quoting *SEC v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015), quoting in turn *Deppe v. Tripp*, 863 F.2d 1356, 1360 (7th Cir. 1988).

2.   *The Claimed Error*

Both of Hirlston's ADA claims required her to show she was a qualified individual with a disability, meaning she had to be able to perform the essential job functions of an Optical Manager with or without reasonable accommodations. 42 U.S.C. § 12111(8); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224 (7th Cir. 2015).

Hirlston argues that the jury instructions erroneously defined "qualified." The court instructed the jury: "Under the ADA, Ms. Hirlston was 'qualified' if she … could do the job's essential functions, either with or without the reasonable accommodation *she proposed*." Hirlston argues that the "she proposed" phrase was erroneous because it effectively limited her case at trial to the accommodations she had proposed in the interactive process with Costco managers to find a reasonable accommodation.

As a general rule, we agree with Hirlston that an ADA plaintiff is not necessarily limited at trial to the accommodations she proposed before the lawsuit. We are not convinced, however, that the instruction as given was so prejudicial to Hirlston that we should reverse on plain-error review and order a new trial on this forfeited issue.

Hirlston's argument on appeal raises a sometimes tricky but important issue in ADA litigation. The ADA plaintiff has the burden of showing at trial that a reasonable accommodation would have enabled her to do the essential functions of the job in question. E.g., *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014). But the question may arise whether and to what extent the plaintiff might be limited at trial to accommodations she proposed to the employer or that were discussed in the "interactive process" between employer and employee contemplated by the ADA. The answer may depend on which side is deemed more responsible for the breakdown of the interactive process. See, e.g., *Spurling*, 739 F.3d at 1062; *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805–06 (7th Cir. 2005); *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) (employer's failure to engage in interactive process may explain failure to identify appropriate accommodation); *Beck v. University of Wisconsin Board of Regents*, 75 F.3d 1130, 1135–36 (7th Cir. 1996).

The problem is illustrated well in *Mlsna v. Union Pacific R.R. Co.*, 975 F.3d 629 (7th Cir. 2020), where we made clear that, in determining potentially reasonable accommodations, the "employer must consider more than just what the plaintiff employee proposes." *Id.* at 638. In *Mlsna*, a railroad conductor had suffered significant hearing loss. He needed hearing aids to improve his hearing, but railroad safety regulations

required him to wear hearing protection on the job, which re-duced his hearing. The employee was unable to pass hearing tests while wearing both hearing aids and hearing protection at the same time. He proposed to his employer an accommo-dation using custom-made hearing aids. *Id.* at 637. The rail-road rejected that accommodation, claiming that the pro-posed device did not meet noise-reduction ratings. But the railroad never identified an alternative. *Id.* at 631. It simply terminated the conductor's employment. The employee sued for failure to accommodate and lost on summary judgment.

We reversed. One reason was that the railroad had failed to consider alternative devices, even though many were avail-able. *Mlsna*, 975 F.3d at 637. Because the employer had not considered potential reasonable accommodations that could have enabled the employee to perform his job, there was a question of fact whether the employer "fulfilled its obligation to provide [the employee] with a reasonable accommoda-tion." *Id.* at 638. During the interactive process, "[a] proposed accommodation is not limited to what the plaintiff introduced into the process." *Id.* at 638–39. "The defendant employer must consider more than just what the plaintiff employee pro-poses." *Id.* at 638, citing *Sears*, 417 F.3d at 807 (employer has duty to work with employee to "craft a reasonable accommo-dation"); *Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786–87 (7th Cir. 2016) (employer must do more than "s[i]t on its hands" when employee requests accommodation); *Snapp v. United Transp. Union*, 889 F.3d 1088, 1098 (9th Cir. 2018) ("It is the employer's responsibility, through participation in the in-teractive process, to assist in identifying possible accommo-dations."), quoting *Morton v. United Parcel Serv., Inc.*, 272 F.3d 1249, 1256 (9th Cir. 2001). Where the employer had failed to propose accommodations, the employee was entitled to

oppose summary judgment by coming forward for the first time in the lawsuit with evidence of other available accommodations.

The closest Hirlston comes to showing possible prejudice in this trial was a portion of Costco's closing argument. Costco pointed out that Hirlston had not requested one particular accommodation—a powered wheelchair. The point was not developed, however. With the more leisurely time for reflection on appeal, we can see the implication of the comment was that Costco was not required to consider a possible accommodation if Hirlston had not proposed it while still on the job. That implied point was not correct, as shown by *Mlsna*, *Sears*, and *Lawler*, among other cases. Costco was required to consider options beyond those "she proposed" to keep Hirlston in her current position before resorting to reassignment. Reassignment is an accommodation of last resort. See *Gile v. United Airlines, Inc.*, 95 F.3d 492, 497 (7th Cir. 1996), citing 29 C.F.R. app., § 1630.2(*o*). Other circuits share our understanding of this issue. See *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1166 (10th Cir. 1999) (en banc) ("[T]he employer must determine that no reasonable accommodation could be made to keep the disabled employee in his present position. Only then should the employer move to the alternative accommodation of reassignment."); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1301 (D.C. Cir. 1998) (en banc); *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 634 (6th Cir. 1998); *Wirtes v. City of Newport News*, 996 F.3d 234, 242–43 (4th Cir. 2021) (reassignment "strongly disfavored" when employee can still do current job with accommodation).[2]

---

[2] Our treatment of reassignment as a last resort is consistent with the ADA's implementing regulations, 29 C.F.R. app., § 1630.2(*o*)

But it is not enough for Hirlston to show an abstract legal error in the instructions. This is where the narrow review available for forfeited objections to jury instructions is an obstacle for Hirlston, as we explain next.

The core dispute at trial was whether Hirlston could perform the essential functions of the Optical Manager job with reasonable accommodations, consistent with her doctor's restrictions on her physical activity. Under Costco's view, Hirlston could not do the essential functions consistent with her doctor's restrictions, so the leave of absence and later transfer to a lower-paid position were reasonable accommodations that let Hirlston continue to work for Costco. From Hirlston's point of view, though, she had been able to do the job with appropriate "workarounds." In her view, Costco discriminated against her and retaliated against her by putting her on leave and demoting her. In some cases, a leave of absence and reassignment can be reasonable accommodations, but in other circumstances, they can be adverse employment actions. They

("[R]eassignment should be considered only when accommodation within the individual's current position would pose an undue hardship."), and applicable EEOC guidance, EEOC Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, No. 915.002 (Oct. 17, 2002), https://www.eeoc.gov/laws/guidance/enforcement-guidance-reasonable-accommodation-and-undue-hardship-under-ada, archived at https://perma.cc/722C-9WXR ("Reassignment is the reasonable accommodation of last resort."). This treatment is also consistent with the key House and Senate reports on the ADA. H.R. Rep. No. 101-485(II), at 63 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 345 ("Efforts should be made … to accommodate an employee in the position that he or she was hired to fill before reassignment is considered."); S. Rep. No. 101-116, at 29 ("[E]fforts should be made to accommodate an employee in the position that he or she was hired to fill before reassignment should be considered.").

cannot be both at the same time in the same case. *Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 856 (7th Cir. 2019).

The parties presented conflicting evidence on these points, such as just how limiting the doctor's restrictions were, whether Hirlston should have been permitted to delegate some physically difficult tasks to others, whether a "grabber" device would have allowed her to reach floor-level objects without bending, stooping, or kneeling, and whether a powered sit-to-stand wheelchair or a higher work chair would have allowed Hirlston to handle the work that she needed to do herself. Some evidence also addressed the interactive process, and the district court gave appropriate instructions about that process.

The question whether Hirlston was able to carry out the job's essential functions with reasonable accommodations was decisive. As noted, the jury answered "no" to that question, which meant the jury went no further and ruled in favor of Costco on all claims before it. We are not persuaded, however, that the disputed "she proposed" phrase in the jury instruction had any effect on the verdict, let alone that it was so prejudicial to Hirlston that we should overlook her forfeiture. Even in closing argument, neither counsel focused on who proposed various possible accommodations or the "she proposed" phrase that Hirlston argues on appeal was so important for the jury. Defendant's brief mention of the powered sit-stand wheelchair option emphasized plaintiff's changing position on that option during trial, not whether she had proposed it during the interactive process. On plain-error review, we find that plaintiff was not prejudiced by the forfeited error in the instruction on the definition of "qualified" under the ADA.

Hirlston's doctor's restrictions said she could "never" stoop, bend, or kneel. An employer is entitled—and required—not to permit "employees [to] exceed their doctor's restrictions, even if they think they can." *Tate v. Dart*, 51 F.4th 789, 801–02 (7th Cir. 2022), citing *Kotaska v. Federal Express Corp.*, 966 F.3d 624, 631 (7th Cir. 2020). By the same token, an employee "is not entitled to ask a jury to bend the meaning of those restrictions." *Id.*; see also *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 224–25 (7th Cir. 2015) (affirming summary judgment for Costco on similar ADA claims by another Optical Manager; Costco honored plaintiff's doctor's restrictions and refused request for transfer until doctor cleared him for that work). Accordingly, despite the abstract error in the jury instruction defining "qualified," Hirlston suffered no prejudice to her discrimination and failure-to-accommodate claims. The same reasoning extends to the retaliation claim decided by the district judge, whose decision was consistent with the jury's verdict. Hirlston has not shown reversible error in the jury instructions.

C. *Photographs*

Finally, Hirlston argues on appeal that the district court erred by admitting two photographs that Costco offered despite having failed to disclose them to Hirlston during discovery. The discovery provisions in the Federal Rules of Civil Procedure attempt to prevent such surprises at trial. Rule 26(a)(3)(A)(iii) requires disclosure of "each document or other exhibit" that the party expects to offer or may offer if the need arises. Rule 37(c)(1) provides that if a party has failed to provide information required under Rule 26(a), "the party is not allowed to use that information … to supply evidence … at trial, unless the failure was substantially justified or is

harmless." These requirements may be modified by the district court, and their enforcement is left to the court's sound discretion. *In re Golant*, 239 F.3d 931, 937 (7th Cir. 2001).

The record in this case shows that both sides offered as exhibits less than a handful of photographs that had not been properly disclosed before trial. The district court admitted plaintiff's late-disclosed photographs, just as it admitted defendant's late-disclosed photographs. Having tolerated plaintiff's oversights, the district court did not abuse its discretion in allowing Costco similar leeway. In addition, we see no risk of unfair prejudice. The disputed photographs here showed storage cubicles in the optical department. Costco argued at trial, and used the photographs to help demonstrate, that these storage cubicles were too low to the floor for Hirlston to have used a "grabber." We must assume that plaintiff was thoroughly familiar with the storage cubicles in the department she managed.

The judgment of the district court is

AFFIRMED.