**MILWAUKEE WOMEN'S MEDICAL SERVICES, INC., Plaintiff,**

and

**United States of America, Plaintiff–Intervenor,**

v.

**Ronald BROCK, et al., Defendants.**

No. 94–C–793.

United States District Court, E.D. Wisconsin.

April 30, 1998.

---

Roger K. Evans, Legal Action for Reproductive Rights, Planned Parenthood Federation of America, New York City, for Milwaukee Women's Medical Services, Inc.

Kevin E. Martens, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, Pamela K. Chen, United States Department of Justice, Civil Rights Division, Washington, DC, for U.S.

Ronald Brock, pro se.

James Soderna, Milwaukee, WI, pro se.

Dale Pultz, Dodge (Inmate's Mail), Waupun, WI, pro se.

Michael Suhy, Warner, NH, pro se.

Thomas J. McClure, McClure Law Offices, Delafield, WI, for Marilyn Ruth Hatch.

Colin Lester Hudson, Duluth, MN, pro se.

Walter M. Weber/Jay A. Sekulow, American Center for Law and Justice, Washington, DC, Ronald S. Koener, Koener Law Office, Brookfield, WI, Francis J. Manion, American Center for Law & Justice, New Hope, KY, for Edmund Miller & Anne Marie Gilpin.

## DECISION AND ORDER

RANDA, District Judge.

This matter comes before the Court on plaintiffs' motions for summary judgment. For the following reasons, the motions are granted-in-part and denied-in-part.

## I

The following facts are undisputed. On June 4, 1994, defendants ·Ronald Brock ("Brock"), Dale R. Pultz ("Pultz"), James D. Soderna ("Soderna"), Michael C. Suhy ("Suhy"), Colin L. Hudson· ("Hudson") and Marilyn Hatch ("Hatch") (collectively, "the Defendants") were arrested for blockading two entrances to the Affiliated Medical Services abortion clinic ("the Clinic") located in Milwaukee, Wisconsin. (Plaintiff's Proposed Findings of Fact ("PFOF") at ¶ 1.) *See also, United States v. Soderna,* 82 F.3d 1370, 1373 (7th Cir.1996). The blockade consisted of disabled automobiles and a large drum filled with concrete and steel, to which the Defendants chained themselves. *Soderna,* 82 F.3d at 1373. Although it took the local fire department several hours to remove the blockades, the scene itself was peaceful. *Id.* There was no violence. *Id.* There were no threats of violence. *Id.* The defendants offered no resistance to their removal or arrest. *Id.* There were no displays of anger of any kind by the Defendants or their supporters, who were picketing peacefully nearby. *Id.* The Defendants were clearly engaged in an act of nonviolent civil disobedience directed at preventing the Clinic from performing abortions. However, by extending their actions to physical obstruction of the entrances to the Clinic, Defendants crossed a line recently drawn by the Federal Government.

1. In an unrelated case, this Court struck down FACE as an unconstitutional exercise of Congress' power under the Commerce Clause and the 14th Amendment to the United States Constitution. *See, United States v. Wilson,* 880 F.Supp. 621 (E.D.Wis.1995). That decision was reversed by the 7th Circuit on appeal. *See, United States v. Wilson,* 73 F.3d 675 (7th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 46, 136 L.Ed.2d 12 (1996). While the Court holds to its initial view of the statute, it is bound by the 7th Circuit's contrary view and must enforce the statute accordingly.

2. The Clinic seeks injunctive relief enjoining the Defendants from blocking access to the Clinic's entrances. The Intervenor–Complaint sought similar injunctive relief, and in addition thereto, sought a "buffer zone" which would "permanently enjoin[ ] [the Defendants] from congregating, demonstrating, counseling or engaging in any other protest activity within 50 feet of the doorways, entrances, parking lots or parking lot entrances of the ... [C]linic." It is unclear

They were arrested and charged criminally with violations of the Freedom of Access to Clinic Entrances Act ("FACE"), 18 U.S.C. § 248, which prohibits, among other things, the use of "physical obstruction[s]" to "intentionally ... interfere[ ] with or attempt[ ] to ... interfere[ ] with" persons seeking to obtain or provide abortions.[1] 18 U.S.C.A. § 248(a)(1) (Supp.1998). (PFOF at ¶ 1.)

Roughly one month after Defendants' arrests, this parallel civil action was filed by the Clinic. The suit seeks, *inter alia,* a declaration that Defendants violated FACE, a permanent injunction enjoining the Defendants from blocking access to the Clinic, and $5,000 in statutory damages against each defendant as well as separate awards for punitive damages. The parties agreed to stay the matter pending resolution of the criminal proceedings.

The Defendants were eventually convicted of nonviolent obstruction after a bench trial to another Branch of this Court (their demands for a jury trial having been denied) and received sentences ranging from 30 days to 6 months and fines ranging from $500 to $3500. (PFOF at ¶ 2.) *Soderna,* 82 F.3d at 1373. Roughly one month after the criminal convictions were obtained, the United States moved to intervene in this action, seeking, *inter alia,* broader injunctive relief than that sought by the Clinic and compensatory damages for all individuals aggrieved by Defendants' conduct.[2] The motion to intervene

whether the Government still seeks the so-called buffer zone. In connection with its summary judgment motion, the Government seeks only to enjoin the Defendants "from blocking, impeding, inhibiting or obstructing in any way access to the facilities of [the Clinic], or violating, or aiding, abetting or inciting others to violate, the provisions of FACE ...." In any event, the "buffer zone" strikes the Court as both unnecessary and inappropriate. An injunction ensuring ready access to the Clinic is enforceable regardless of whether the obstruction occurs within 1 foot of a Clinic entrance or within 50 feet of that entrance. Absent evidence that Defendants will violate such an injunction anytime they are within 50 feet of the Clinic, the request for a buffer zone strikes the Court as an attempt to regulate and restrict peaceful protest activity that does not limit anyone's access to the Clinic. FACE expressly provides that it should not be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition

was granted by another Branch of this Court on April 18, 1995. Several months later, the matter was randomly reassigned to this Court. In light of the Court's prior decision holding FACE unconstitutional, the Court stayed the matter indefinitely pending resolution on appeal of the statute's constitutionality.

As indicated earlier, FACE survived various challenges to its constitutionality, and the stay was lifted. The matter now comes before the Court on motions for summary judgment filed by the Clinic and the Government. The essential premise of both motions is that, in light of the convictions obtained in the criminal proceedings, principles of collateral estoppel and/or res judicata compel a finding of civil liability against the Defendants.[3] Plaintiffs' request relief in the form of a declaratory judgment declaring that Defendants violated FACE, a permanent injunction enjoining the Defendants from blocking access to the Clinic, statutory damages in the amount of $5,000 per Defendant, and punitive damages. While the Court agrees that plaintiffs are entitled to summary judgment on the issue of liability, it rejects some of the relief requested.

## II

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.,* at 327, 106 S.Ct. 2548. It "can be a tool of great utility in removing factually insub-

stantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United ed Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.,* 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing law", *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 392 (7th Cir.1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The question whether a material issue of fact is *genuine* necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 1.16 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* "A district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dis-

---

by the First Amendment to the Constitution." 18 U.S.C.A. § 248(d)(1) (Supp.1998). The "buffer zone" approach, on the facts of this case, would seem to do just that.

3. That is, against those defendants who were the subjects of the criminal convictions. Edmund Miller and Anne Marie Gilpin, who are also defendants in this action, are not the subjects of criminal convictions under FACE, so the summary judgment motions do not apply to them.

missed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted). Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[A] party must produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Company*, 853 F.2d 768, 771–72 (10th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Nor may "[a] party to a lawsuit ... ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge, ....' " *Palucki*, 879 F.2d at 1572 (7th Cir.1989). Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Laboratories, Inc.*, 786 F.Supp. 607, 610 (S.D.Miss.1992).

### III

Defendants submit little in the way of a response to plaintiffs' motions. Defendant Brock submits no response whatsoever. Indeed, he may not even be aware of the current motions, as he has apparently changed or abandoned his prior mailing address and failed to notify the parties or the Court of his new address. The Court, in an attempt to provide notice to Brock, asked the Government to review the various records at its disposal to uncover his whereabouts, and even conducted an *in camera* review of Brock's file with the U.S. Probation Office, all to no avail. As it was Mr. Brock's obligation to notify the Court of any change in his mailing address, the Court is left with little choice but to rule on the pending motions without his input.

Defendant Suhy also submits no response. Mr. Suhy personally participated in two scheduling conferences conducted by the Court on November 5th and 12th, 1997, wherein he supplied the Court and counsel with his current mailing address (good through May, 1998). Although the Court directed plaintiffs' to re-serve Mr. Suhy with copies of their motions for summary judgment, Mr. Suhy has apparently chosen not to respond.

Defendants Pultz, Soderna and Hudson have not responded to the motions. These defendants were represented initially by Attorney Eugene Pigatti, but the Court was informed during the November 5th conference that Mr. Pigatti had ceased acting as their counsel. As the Court was unable to locate these three defendants, the November 5th and 12th conference calls were conducted without their participation. However, at the request of the Court, the Government reviewed its records and obtained mailing addresses for all three defendants, and Mr. Soderna himself responded to phone messages left by court staff at a number obtained from local phone listings. The Court then ordered plaintiffs to re-serve the motions for summary judgment on these three individuals. On January 9, 1998, Mr. Soderna submitted an "objection" to the summary judgment motions which indicated that he and Messrs. Pultz and Hudson were close to retaining new counsel. He requested an additional 45 days to accomplish that task. Over three months later, the Court has not heard from Mr. Soderna, or Messrs. Pultz and Hudson, and has not received a notice of appearance from any counsel acting on their behalf.

Defendant Hatch is the only defendant to respond formally to the pending motions. Ms. Hatch does not contest the liability aspects of plaintiffs' motions. However, she argues that material disputes of fact exist on the issue of damages, insofar as "[t]here is absolutely no evidence ... that even hint[s] at what damages the plaintiff clinic might be entitled to." Moreover, Hatch argues that there is absolutely no evidence that she acted with the requisite malice for purposes of an award of punitive damages. Therefore, as to the relief requested, Ms. Hatch asks the Court to deny the motions.

■ Although Defendants offer little opposition to the current motions, the Court must review the same carefully, particularly in

light of the *pro se* status of many of the defendants herein and the fact that Mr. Brock probably has no notice of the current proceedings. Based on the Court's review, it is clear that judgments and decisions in criminal proceedings can be used as a basis for res judicata or collateral estoppel in subsequent civil proceedings. *See generally, Instituto Nacional De Comercializacion Agricola v. Continental Ill. Nat'l Bank,* 858 F.2d 1264 (7th Cir.1988). It is also clear that both doctrines are satisfied by the facts of this case: (1) The Defendants are parties to both proceedings, as is the Government;[4] (2) the critical issue and/or cause of action in both proceedings is identical, *i.e.,* did the Defendants violate 18 U.S.C. § 248(a)(1);[5] (3) the Defendants were given a full and fair opportunity to litigate that issue and/or cause of action in the criminal proceedings, the same was decided against them on the merits, and a final judgment was entered; and (4) resolution of the issue was necessary to the result in the criminal proceedings. (See, United States' Memorandum in Support at 4–9, and reasoning and authorities contained therein.) None of the Defendants, not even Ms. Hatch, quarrels with these propositions. Therefore, it appears that summary judgment, at least on the issue of liability, is warranted.

However, one issue no one seems to have considered is the interaction between principles of res judicata and collateral estoppel with Defendants' 7th Amendment right to a jury trial in this matter. That is, Defendants were not accorded a jury trial in the criminal proceedings, as first time violations of FACE are deemed "petty" offenses where the violation involves nothing more than nonviolent obstruction. Defendants asked for a jury trial, but the same was denied, and that decision was upheld on appeal. Some of the

defendants have now reiterated their desire for a jury trial in this matter, as is their right under the 7th Amendment.[6] Applying principles of res judicata and collateral estoppel to the facts at hand would seem to deprive defendants of this right, as it would apply a judge's determination of the facts to a proceeding which requires a jury's determination. Although the facts in this matter seem fairly clear, courts have nonetheless observed that "juries are not bound by what seems inescapable logic to judges." *Burns v. Lawther,* 53 F.3d 1237, 1242 (11th Cir.1995) (quoting, *Morissette v. United States,* 342 U.S. 246, 276, 72 S.Ct. 240, 256, 96 L.Ed. 288 (1952)). Indeed, a jury would have one significant option not available to the Court, *i.e.,* jury nullification. For these reasons, the Court would be inclined to deny the pending motions for summary judgment on 7th Amendment grounds.[7]

■ The United States Supreme Court, however, has ruled against this interpretation of the 7th Amendment. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court held that a court's determinations of issues in an equitable action could collaterally estop relitigation of the same issues in a subsequent legal action without violating a litigant's right to a jury trial. *Id.,* 439 U.S. at 333, 99 S.Ct., at 652–53. Chief Justice Rehnquist dissented from this view, but the majority opinion remains the law of the land. That ruling applies equally to cases where a plaintiff asserts collateral estoppel offensively to preclude a defendant from contesting liability. *See e.g., State v. Moore,* 897 F.Supp. 276, 280 fn. 1 (S.D.W.Va.1995). While the Supreme Court recognizes an exception to this rule when the equitable and

---

**4.** The Clinic is a party only to this civil proceeding, which is why its motion is based solely on the doctrine of collateral estoppel. The Government, being party to both proceedings, may also rely on res judicata.

**5.** The provision of the statute giving rise to a civil cause of action does not distinguish between elements of a criminal and civil violation of the statute. Rather, the civil provision simply states that liability attaches "by reason of the conduct prohibited by subsection (a)", thereby adopting the elements of a criminal violation. 18 U.S.C.A. § 248(c)(1) (Supp.1998).

**6.** Those defendants who have not formally requested a jury trial have not waived their right to one. Their failure to file a formal demand is explained and/or excused by the fact that the Clinic itself requested a jury trial in its complaint.

**7.** Of course, plaintiffs could still file additional motions seeking summary judgment on the facts alone, without reference to principles of res judicata or collateral estoppel. That is, to the extent that the underlying facts are undisputed, it may be that no reasonable jury could rule in favor of the Defendants.

legal claims are brought within the same proceeding, *see e.g., Lytle v. Household Manufacturing, Inc.*, 494 U.S. 545, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990), the claims here were commenced in separate proceedings by different plaintiffs before separate tribunals. Accordingly, plaintiffs' motions for summary judgment are granted as to the liability aspects of the case. Plaintiffs are awarded a declaratory judgment stating that Defendants have violated § 248(a)(1) of FACE.

As for the relief requested, the finding of liability entitles both the Clinic and the Government to injunctive relief permanently enjoining the Defendants from such violations in the future. Borrowing the words of the statute applicable to the facts of this case, the Court hereby enjoins the Defendants from rendering impassable ingress to or egress from the Clinic, or rendering passage to or from the Clinic unreasonably difficult or hazardous. 18 U.S.C.A. § 248(d)(4) (Supp. 1998).

■■■ The Clinic also seeks compensatory damages in the amount of $5,000 per defendant. Hatch argues that such an award is premature as there is no evidence in the record concerning the Clinic's actual damages. That is true, but the Clinic need not submit such evidence. FACE allows a plaintiff in a civil action to elect, in lieu of actual damages, "an award of statutory damages in the amount of $5,000 per violation." 18 U.S.C.A. § 248(c)(1)(B) (Supp.1998). The Clinic made such an election in their initial complaint, and doing so relieved it of the burden to submit evidence of actual damages. The Clinic is not, however, entitled to $5,000 from each and every Defendant. As explained in *Planned Parenthood of Southeastern Pennsylvania, Inc. v. Walton*, 1998 WL 88373 (E.D.Pa.1998), FACE authorizes statutory damages of $5,000 "per violation", not per defendant. This is in distinct contrast, for example, to the provision authorizing the imposition of "civil penalties" in an action brought by the Attorney General. *See,* 18 U.S.C.A. § 248(c)(2)(B) (Supp.1998). The latter section provides that a civil penalty may be issued against "each respondent" irrespective of the number of violations in-

volved. The Court agrees with the *Walton* court's conclusion that Congress' use of different language in the two provisions indicates that a blockade conducted by several individuals constitutes a single violation under FACE triggering a single award of $5,000. To rule otherwise would contradict the language of the statute. Therefore, judgment shall be entered against the Defendants in the total amount of $5,000, for which they are each jointly and severally liable.

■■■ Both the Clinic and the Government ask for punitive damages. The Court sees no factual basis for an award of punitive damages. FACE-does not specify an applicable standard for awarding punitive damages, leaving the same to the Court's discretion.[8] The Court borrows from the federal common law standard for punitive damages in civil rights cases, which allows such damages upon a showing that a defendant's conduct was "motivated by evil intent or callous indifference to the federally-protected rights of plaintiffs." *Coulter v. Vitale*, 882 F.2d 1286, 1289 (7th Cir.1989). There has been no such showing here. Defendants' obvious intent was to prevent, through acts of nonviolence, what they believe in good faith to be the wrongful killing of innocent human life. The Court cannot characterize this belief as "evil". To the contrary, while Defendants motives run counter to the *Zeitgeist*, they are certainly not evil or malicious, and the Court is not about to use the sanction of punitive damages to stifle acts of nonviolent civil disobedience motivated by a good faith belief that such acts are morally compelled and justified.

■■■ Nor is it enough to show that Defendants acted intentionally or deliberately as a basis for arguing that they were "callously indifferent" to a woman's federally-protected abortion right. Intent is an element of every FACE violation. Such a rule would trigger punitive damages in every case where liability is established, a result which is neither just nor consistent with the nature of punitive damages. The extraordinary sanction of punitive damages is reserved for situations where there is some aggravating circum-

---

**8.** The statute reads, "the court *may* award appropriate relief, including … punitive damages …." 18 U.S.C.A. § 248(c)(1)(B) (Supp.1998) (emphasis added).

stance in addition to the underlying tort or misconduct, one that is sufficiently grievous to warrant punishment. In the FACE context, such circumstances might include acts or threats of violence, or conduct which deliberately creates an imminent danger to the physical health or safety of others. There is no such showing here. As stated earlier, Defendants committed no acts or threats of violence. They did not incite others to commit such acts. They did not create or pose an imminent danger to the physical health or safety of others. They displayed no external hostility whatsoever. They peacefully obstructed the entrances to the Clinic, nothing more. While such conduct gives rise to liability, it does not warrant the sanction of punitive damages.

**NOW THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The Clinic's and the Government's motions for summary judgment are granted-in-part and denied-in-part, consistent with the foregoing opinion;

2. At the close of this case, declaratory judgment shall be entered in the Clinic's and the Government's favor stating that defendants Brock, Soderna, Suhy, Hatch, Hudson and Pultz violated 18 U.S.C. § 248(a)(1);

3. At the close of this case, judgment shall be entered in favor of the Clinic in the total amount of $5,000.00 as against defendants Brock, Soderna, Suhy, Hatch, Hudson and Pultz, jointly and severally; and

4. Defendants Brock, Soderna, Suhy, Hatch, Hudson and Pultz are permanently enjoined from rendering impassable ingress to or egress from the Clinic, or rendering passage to or from the Clinic unreasonably difficult or hazardous.

**SO ORDERED.**